IN RE EQUALIZATION OF ASSESSMENT OF NATURAL GAS PIPE LINES.
STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, PLAINTIFF IN ERROR, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, DEFENDANT IN ERROR.

FILED MAY 18, 1932. No. 28085.

C. A. Sorensen, Attorney General, Hugh La Master and Loren H. Laughlin, for plaintiff in error.

Clark Jeary, F. C. Radke and Barlow Nye, contra.

N. M. Sommerville, pro se.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

PAINE, J.

Upon August 4, 1931, a petition for writ of error to the state board of equalization was filed in this court by C. A. Sorensen, as attorney general of the state, and as attorney for Gage, Dakota and Saline counties. Writ of error was allowed on the same day by two associate justices of this court, and service was accepted by William H. Smith, state tax commissioner. Upon September 1, 1931, a transcript was filed in this court, and upon the same day a demurrer was filed by the state board of equalization by F. C. Radke, its acting attorney, which set out among the grounds therefor:

■ That the attorney general has not the legal capacity to institute or prosecute a writ of error to the supreme court from a decision of the state board of equalization, for the reason that our statute, section 77-1004, Comp. St. 1929, gives the legal right to appeal only to "any person, county or municipality affected thereby;" that the counties of Gage, Saline and Dakota have not the legal capacity to sue by and through the attorney general, for the reason that such capacity is given to counties only through their county attorneys; and finally, that the attorney general has not legal capacity to institute suit or to appear for parties adverse to the state board of equalization.

This demurrer was argued to this court upon September 21, 1931, by F. C. Radke and Clark Jeary, acting as attorneys for the state board of equalization, and by the attorney general in person, who cited section 84-204, Comp. St. 1929, which reads: "The attorney general and the department of justice shall have the same powers and prerogatives in each of the several counties of the state as the county attorneys have in their respective counties."

The attorney general also defended his action by relying upon the decision of this court in the case of *State*

*v. Pacific Express Co.,* 80 Neb. 823, in which is cited a New Jersey case, holding:

"In equity, as in the law court, the attorney general has the right, in cases where the property of the sovereign or the interests of the public are directly concerned, to institute suit, by what may be called civil information, for their protection. The state is not left without redress in its own courts because no private citizen chooses to encounter the difficulty of defending it, but has appointed this high public officer, on whom it has cast the responsibility and to whom, therefore, it has given the right of appearing in its behalf and invoking the judgment of the courts on such questions of public moment."

We find that a late case, which is in line with the weight of authority, is *State v. Finch,* 128 Kan. 665, 66 A. L. R. 1369, which traces the powers and duties of the office of attorney general at common law from the earliest times to the present time, and holds: "Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest."

Throop on Public Officers, section 542, says: "The rule respecting such powers is that, in addition to the powers expressly given by statute, * * * he has by implication such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be implied from the statute granting the express powers."

The attorney general is given executive powers in regard to various matters committed to his care. *Follmer v. State,* 94 Neb. 217, Ann. Cas. 1914D, 151.

By the great weight of authority, it is now held that the attorney general is clothed and charged with all the common-law powers and duties except in so far as they have been limited by statute. The duties of his office are so numerous and varied that it has not been the policy of different state legislatures to enumerate them. As the chief law officer of the state, he may, in the ab-

sence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time require. 2 R. C. L. 916.

The attorney general is the principal law officer of the state. As it was held by this court, in passing on the demurrer, that he had the right of invoking the judgment of this court by writ of error to the state board of equalization and assessment upon an order reducing assessments entered by that board, that ruling has become the law of this case.

■ After an answer and a reply were filed, trial was had to this court upon the briefs and arguments, including those of N. M. Sommerville *pro se,* an intervening taxpayer, who joined in the contentions of the attorney general.

It is insisted that the notice given upon July 20, 1931, fixing a hearing for July 25 following, was an insufficient notice, and we are cited to the following cases: *Howard v. Jensen,* 117 Neb. 102; *Garrett v. State,* 118 Neb. 373; *Northwestern Bell Telephone Co. v. State Board of Equalization and Assessment,* 119 Neb. 138; and also the case of *Gurske v. Britt,* 86 Neb. 312. However, in the case at bar the parties objecting to the notice had actual notice of the meeting, and attended the meeting, had an opportunity to be heard, and were not prejudiced by the notice served in this case.

It is next contended that the statute, section 77-1004, Comp. St. 1929, requires that "a full hearing" be had, and we are cited to the case of *Northwestern Bell Telephone Co. v. State Board of Equalization and Assessment,* 119 Neb. 138, in which an order was entered without affording sufficient opportunity for a hearing, and setting out that the board did not call any witnesses or take any testimony prior to the making of the order increasing the valuation of the telephone property, for which reason the order was vacated and set aside in this court. However, in the case at bar the transcript shows that a number of exhibits were before the court in relation to assessments of various counties of the natural gas

pipe lines and the cost per mile, as reported by the company, with the valuations asked by the companies and the valuations recommended by the county assessors, as well as the valuations fixed by the county boards of equalization, together with an affidavit of a purchasing agent of a gas engineering company in relation to prices for which the Republic Iron & Steel Company would furnish said pipe on July 17, 1931, or any day *after* April 1, 1931, and it is contended this affidavit would not cover the price *on* April 1, 1931, being the date on which assessment values were to be fixed.

Section 77-1004 provides that the state board of equalization and assessment may increase or decrease the assessed valuation in any county by making a per centum increase or decrease of the values already fixed and certifying the same to the county clerk of the proper county.

In the case of *Hacker v. Howe,* 72 Neb. 385, this court has discussed fully the requirements of the statute in raising valuations, and the same care must be followed in lowering valuations. *Grant v. Bartholomew,* 58 Neb. 839.

However, the action taken by the state board in the case at bar did not comply with the plain requirements of this statute in several particulars. The order entered by the state board upon July 25, 1931, first struck a general average of the assessed valuations of the various sizes of pipe lines in some 30 counties reporting pipe lines, and from that general average of the assessed valuations which had been entered in these different counties the board then made a general deduction of 17 per cent., and then fixed the assessed value in dollars per mile; the action taken being set out in the following entry made at the time, and including an amendment made at a later date: "In the matter of the equalization of the natural gas pipe lines in the various' counties, it was moved by Secretary of State Marsh and seconded by Auditor Marsh that said equalization be effected by striking an average of the assessed valuation of the various sizes of pipe lines in the various counties, and that from this average

there be a deduction of 17 per cent., in consideration of the decrease in the assessed valuation of the state in 1931 as compared to 1930, and in further consideration of the depreciation in the cost of construction of pipe lines in 1931 and 1930. Motion carried."

It appears from the transcript of the evidence before the board that the total tangible valuation of the state in 1930 was $3,091,019,372 and for 1931 it was $3,045,793,706, which was a decrease of approximately .014 in percentage in the total assessed valuation of the whole state, which is cited by the board as one of its reasons for making a decrease of 17 per cent. in the value of all pipe lines in the state.

Notice of this action was sent by a letter of the tax commissioner, not by a certificate, as required by the statute, which letter was mailed to each of the 30 counties having pipe lines within their limits, stating that the equalized valuation of pipe lines was arbitrarily fixed by the board at $958 per mile for two-inch pipe lines, and giving the valuation in dollars per mile for each two-inch increase up to 24-inch pipe line, which should be fixed at $13,232 per mile.

It may be argued that the action of this board is final, and that such board is the supreme body to fix such assessments. But if this board failed to follow the plain provisions of our statute, and thus acted without authority, proper evidence, or due investigation, or for any other reason rendered a decision which was not based upon the facts, or according to law, and was unjust to the taxpayers, such action of the board may properly be brought to this court on a writ of error.

It is hereby ordered that the action of the board in fixing such valuations of pipe lines be and the same is hereby set aside, and the cause remanded to the state board of equalization and assessment, to take action therein as provided by law.

REVERSED.

DAY, J., dissenting.

A dissent to the majority opinion is respectfully registered with the following observations:

1. The supreme executive power shall be vested in the governor. Const. art. IV, sec. 6. As commander-in-chief of the military forces of the state he may call out the same to execute the law. Const. art. IV, sec. 14. The civil administration of the law of the state is vested in the governor. Comp. St. 1929, sec. 81-101. Sections 84-201 to 84-210, Comp. St. 1929, fix the duties of the attorney general of the state. The duties and powers conferred upon him by these sections do not include the right to appeal from an order of the state board of equalization and assessment.

2. The right to bring error proceedings from an order of the state board of equalization and assessment is statutory. It is provided for by section 77-1004, Comp. St. 1929, and is limited to any person, county or municipality affected thereby. This section does not confer upon the attorney general in an official capacity the right of taking such an appeal. Section 77-509, Comp. St. 1929, provides for error proceedings from the board of equalization and assessment in the case of railroad property and specifically provides that the attorney general in such a case shall have the right to bring the proceedings. It may be fairly inferred that, where the legislature does not confer this right, the right does not exist. In *Reimers v. Merrick County*, 82 Neb. 639, this court held: "Whenever the legislature provides for an appeal to a court from a decision of a board of equalization, that court, no matter what may be its grade, is one of limited jurisdiction for said purpose, and must keep strictly within the letter of the statute defining its power."

3. One of the duties of the attorney general is to represent the state and the executive officers. The statutes give him some discretion in this matter. However, this ought not to be held to give him authority to appear in an action adverse to the state or the executive officers in the absence of corruption or criminal acts of the executives. Mere irregularity in the performance of exec-

utive duties does not confer upon him the power to appear adversely.

4. Furthermore, the tax commissioner is a constitutional officer of the state. Const. art. IV, sec. 28. He has jurisdiction over the administration of the revenue laws of the state and together with the governor, secretary of state, state auditor and state treasurer shall have power to review and equalize assessments of property for taxation within the state. This delegation of power by the Constitution is exclusive and must therefore make untenable any theory of implied delegation of power. For a discussion of this provision of the Constitution see *Elmen v. State Board of Equalization and Assessment,* 120 Neb. 141.

5. The state board of equalization is an administrative board and is not required to conduct hearings with the formality and technical perfection of a trial court. *Hacker v. Howe,* 72 Neb. 385; *Chicago & N. W. R. Co. v. State Board of Equalization and Assessment,* 121 Neb. 592. In the last cited case this court held: "It is to be presumed that a board of equalization and assessment is composed of members who are familar with and have a knowledge of the details connected with the assessment of properties, and, in the absence of unlawful procedure, or apparent misjudgment or omission of vital facts, this court will not interfere with the board's jurisdiction of the subject-matter."

The writer is of the opinion that the proceeding in error should be dismissed.