IN RE ASSESSMENT OF REAL ESTATE AND BUSINESS PROPERTY IN THE STATE OF NEBRASKA FOR 1953. COUNTY OF GRANT, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.

63 N. W. 2d 459

Filed March 12, 1954. No. 33478.

Lester C. Hungerford, C. Russell Mattson, and Donald R. Kanzler, for appellant.

Clarence S. Beck, Attorney General, and C. C. Sheldon, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The County of Grant gave notice of its intention to obtain a review of the decision of the State Board of Equalization and Assessment with respect to the valuations of real and personal property in the county as provided for in section 77-510, R. R. S. 1943. In accordance therewith, the county perfected its appeal to this court. The State Board of Equalization and Assessment increased the valuations returned by the county board of equalization of Grant County in the manner hereinafter shown.

For convenience, and unless otherwise required, we shall refer to the appellant county as the County, and the State Board of Equalization and Assessment as the State Board.

The County has set forth several assignments of error. Instead of separately stating these assignments of error we will determine the same deemed pertinent to this appeal in chronological order.

The county abstract of assessment for 1953 was forwarded to the State Board as provided for in section 77-1514, R. R. S. 1943, and contained a showing of the values as equalized and corrected by the county board of equalization, and the information as to the taxable property in the county as required by said section.

Section 77-505, R. R. S. 1943, provides: "The State Board of Equalization and Assessment shall, on the first Monday of July each year, meet at the State Capitol for the purpose of equalizing assessments on both real and personal property."

The State Board met as required by section 77-505, R. R. S. 1943, on July 6, 1953, and at this meeting adopted a resolution to the effect that the State Board had examined and considered the abstracts of property assessed for taxation in the various counties of the state previously submitted to said board, together with other pertinent data and information submitted by the State Tax Commissioner. Based upon and in consideration of such abstracts, data, and information, together with other matters within the general knowledge of the members of said board, it appeared that a just, equitable, and legal assessment of property in the state could not be made without increasing or decreasing the valuations of property, or some classes or kinds thereof, as returned by the various counties. The board deemed that all counties were either undervalued or overvalued; that hearings should be held before said board at which the legal representatives of such counties should be given an opportunity to show cause why the valuations of property of their respective counties should not be increased or decreased; and that notice should be given each county of the time and place of hearing.

Pursuant to section 77-508, R. R. S. 1943, notice was mailed to the county clerk, county assessor, and chairman of the county board of Grant County. This notice was to the effect that the State Board would meet in the Governor's hearing room in the State Capitol Building,

Lincoln, Nebraska, on July 13, 1953, at 9:30 a. m., for the purpose of considering the equalization of the valuations in Grant County for the year 1953. Then the notice provided: "Representatives of your county may appear at the aforesaid time and place and such representatives will be given an opportunity at said meeting to show why the assessed valuations of any or all class, classes or kinds of property, personal, real or mixed, in your county, as shown by the 1953 abstract of assessment rolls heretofore submitted to this Board, should not be increased or decreased as may be found necessary to equalize the assessments of the various counties of the state in such a manner as to make such assessments conform to law." This notice was dated July 6, 1953, and signed by the Tax Commissioner, secretary of the State Board.

On July 13, 1953, at 9 a. m., the State Board met as indicated in the above notice. Appearing in behalf of the County were three county commissioners and an attorney representing the County. The chairman of the board of county commissioners reported that all land in the county was classified and appraised for assessment purposes in 1942. The three principal classes were: (1) Hay land, (2) grazing land, and (3) swamp land. Valuations ranging from approximately $2.50 to $21 an acre had been placed on these classes of land. The 1946 sales ranging from $8 to $15 an acre were represented as actual values. Confidence was expressed in these latter figures because they were based on Federal Land Bank appraisals, reflecting long-term normal values. Two exhibits were offered by the County and made a part of the record before the State Board, one of which will be discussed later in this opinion.

On July 27, 1953, the State Board met in the office of the State Tax Commissioner in the State Capitol Building at Lincoln, Nebraska, and proceeded to a further examination of the abstracts returned by each of the counties, including that of Douglas County which had

been received by the State Board on that date. Further consideration was given to the showings and presentations made by the various counties at the hearing previously held, and of other evidence and records. The State Board found that in order to make the assessments as returned by the individual counties conform to law, and in order to arrive at a just, equitable, and legal assessment of the real and personal property in the state, the following increases should be made in the assessed valuations as returned by Grant County for 1953:

| Item or Class of Property | Actual Value Shown on 1953 Abstract | Actual Value as Adjusted by State Board | Assessed Value as Equalized by State Board | Percent Incr. or Decr. |
|---|---|---|---|---|
| Lands and Improvements | $4,221,415 | $9,920,310 | $4,960,155 | 135% Incr. |
| Lots and Improvements | 391,245 | 884,210 | 442,105 | 126% Incr. |
| Business Schedules | 215,913 | 291,480 | 145,740 | 35% Incr. |
| Total Household Goods & Personal Equipment | 53,245 | 53,245 | 26,625 | |

The County contends that the State Board failed to follow the law in the equalization of the property for 1953 equalization and assessment.

In determining this appeal, we may not substitute our judgment for that of the State Board. We review the record to determine if the State Board has complied with the requirements of the statutes in exercising the powers granted to it by legislative authority and, where the record is clear that it has, it is then our duty to hold its actions to be in accordance with the law.

The County asserts that when the abstracts of assessment are forwarded to the State Board on or before July 1, as required by section 77-1514, R. R. S. 1943, the State Board is then in a position to have complete information at its disposal as to all of the counties in the state when it meets as required by section 77-505, R. R. S. 1943.

The County further asserts that under the provisions

of section 77-506, R. R. S. 1943, the State Board shall proceed to examine the abstracts of real and personal property assessed for taxation in the several counties of the state, and shall equalize such assessment so as to make the same conform to law. For that purpose it shall have the power to increase or decrease the assessed valuation of the real or personal property of any county or tax district. Such increase or decrease shall be made by a percent, and the percent of increase or decrease when made shall be certified to the county clerk of the proper county.

Attention is directed to section 77-508, R. R. S. 1943. Under the provisions of this section, to comply with the procedure the State Board is required to find out if it appears that a just, equitable, and legal assessment of the real or personal property in the state cannot be made without increasing or decreasing the valuation of such real or personal property as returned by any county, then the State Board shall issue a notice as hereinbefore mentioned.

The County argues that the State Board did not have before it all of the abstracts of real and personal property assessed for taxation in the several counties of the state at its meeting held on July 6, 1953, in accordance with section 77-505, R. R. S. 1943; that it did not receive the abstract containing such subject matter from Douglas County until July 27, 1953; and that under notice dated July 28, 1953, the County was informed of the increase applied to it. Therefore, the State Board was not in a position to know whether a just, equitable, and legal assessment could be made in this state for 1953.

In support of this contention the case of Hacker v. Howe, 72 Neb. 385, 101 N. W. 255, is cited as follows: "When the board has before it the abstracts of assessment of the different counties, such as are required to be formulated and furnished for its information under the law, it is in a position to proceed in the discharge of its

duties pertaining to the equalization of assessments of the different counties, * * *."

As we view sections 77-505 and 77-506, R. R. S. 1943, neither of such sections makes any requirement that the State Board have before it all of the abstracts of assessment of the various counties in the state either before convening its annual meeting or before the commencement of its hearings. Nor do sections 77-508 and 77-509, R. R. S. 1943, make any such requirement. Section 77-509, R. R. S. 1943, refers to section 77-508, R. R. S. 1943, to the effect that legal representatives of the counties may appear and show cause why the valuation or valuations of real or personal property of their county should not be increased or decreased by the State Board, and, after a full hearing, the State Board shall enter its order and certify the same to the county clerks of the proper counties as set forth in section 77-506, R. R. S. 1943. Nowhere in section 77-506, R. R. S. 1943, nor any other section of the statute, is there a mandate as to when the State Board shall have completed its examination of such abstracts of assessment rolls.

The language quoted by the County in Hacker v. Howe, *supra,* as it appears in the opinion constitutes a discussion by the court concerning the type of evidence upon which the State Board may base its final action as to increases and decreases in valuations. The matter of whether the State Board had received all abstracts before holding hearings was not involved in the case. As we read the opinion, no language therein can be interpreted as requiring examination of abstracts of all of the counties, as opposed to examination of only the abstract of the particular county being heard. The opinion does point out that the abstracts of assessments as returned by the various counties are proper subjects for consideration by the State Board, and that a final determination based upon such abstracts, with or without other knowledge or information, is sufficient basis for final orders by the State Board increasing or decreasing

property values. The language appearing in the opinion to the effect that the State Board is in a position to proceed in the discharge of its duties when it has before it the abstracts of assessment of the different counties, means nothing more than that the State Board is then in a position to make a final decision as to what increases or decreases in valuation, if any, are necessary to make equalization, and to enter its orders accordingly.

The statute contemplates that the abstract of assessment rolls should be prepared and forwarded to the State Board on or before July 1. The mere fact that the statute is not complied with in such respect does not create a deadline that invalidates a subsequent preparation and filing, for the reason that section 77-511, R. R. S. 1943, provides a method whereby the State Board is empowered to secure the abstract of assessment rolls where the county assessor fails to transmit it, and section 77-1515, R. R. S. 1943, fixes the penalty for a refusal or neglect to do so. Clearly, the above statutes contain no requirement that the State Board adjourn until the assessment rolls of all of the various counties are before it.

The County contends that the notice sent out by the State Board did not inform it as to whether or not it, by its representatives, should appear to show cause why the valuations should be increased or decreased, and that it would be necessary to inform the County so that it could be prepared to present any subject matter that might be necessary to show either that there should be an increase or a decrease in valuations for equalization purposes.

The County in the instant case was notified in effect that its valuations were being called in for questioning with respect to possible need of adjustment in order to make the same conform to law, and that the County be given an opportunity to demonstrate the truth and accuracy of their valuations.

In the case of Boyd County v. State Board of Equalization & Assessment, 138 Neb. 896, 296 N. W. 152, the sufficiency of the notice was directly in issue. The notice did not advise the county which it was deemed to be, overvalued or undervalued. The court, commenting on the essentials of the notice, said: "This notice informed the county that a hearing would be had and that it would be given opportunity at such meeting to show why its valuation of farm property should not be increased or decreased as might be found necessary to equalize the assessment of the different counties. The statute does not require more. * * * The notice was sufficient to inform the county that its assessment was questioned and that if the county desired it could defend the same at the hearing." We believe this case is a complete answer to the contention of the County with respect to the sufficiency of the notice, and its contention cannot be sustained.

The County contends that in the ordinary course of trade for ranch land in the county, there is no market, therefore the county board of equalization was required to resort to and to use other means and guides to arrive at the actual value of such property, and the State Board was in error in not accepting the values made by the county board of equalization as the actual value of ranch land in the county.

The County refers to evidence given by its representatives before the State Board to the effect that the last real sale of ranch land was in 1944, when the Carruthers ranch was sold on the market; that purchases of ranch land in the county are once-in-a-lifetime sales, and not sales with willing buyers; that most of the land is controlled by older families and kept in the families and now occupied by the second or third generations; and that it is not possible to just buy a ranch, it requires waiting for a period of time until an owner desires to sell.

Taking the foregoing into consideration, the method used by the county board of equalization in arriving at

actual values is based upon the formula of what the ranch land will produce by way of income. Each member of the county board of equalization being a rancher, made the determination of the actual value, and in support thereof, considered the values of ranch land as determined by the Federal Land Bank and insurance company records which demonstrated the value placed by these loaning agencies to conclude the basis upon which a loan might be made on particular ranch land. The county board of equalization had visited every ranch in the county in 1942, and since that time. Federal Land Bank values are based upon what the land will produce by way of income over a 10-year period.

The County cited the case of Schmidt v. Saline County, 122 Neb. 56, 239 N. W. 203, and certain quotations from 26 R. C. L., §§ 322, 324, p. 367, appearing in the opinion. The case of Schulz v. Dixon County, 134 Neb. 549, 279 N. W. 179, 119 A. L. R. 1294, overruled and rescinded the doctrines announced in Schmidt v. Saline County, *supra*, and set forth the following from 26 R. C. L., § 324, p. 367: " 'When property has a known and determinate value ascertained by commerce in it, as in many kinds of personal property and in certain classes of real estate, there can be no difficulty in ascertaining its value for purposes of taxation. In many cases, however, the assessor has no such satisfactory guide, and must value the property by other means. In such cases, if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is the net profits derived therefrom. In such a case the tax is not levied upon the earnings as such, but the earnings are treated as a guide to the capital value. The value of the property is arrived at by capitalizing the net income therefrom at the rate of return prevailing in the same section of the country upon investment of a similar character. In determining the net income of any item of property as a basis for valuation for the purpose

of taxation, the average net income for a number of years should be considered, rather than the earnings of a single year standing alone.'"

The court went on to say: "It is obvious that the first sentence of the paragraph just above quoted is in strict harmony with the Nebraska statute, and is the controlling rule to be followed in the valuation of the farm lands here in suit." Likewise, it is the controlling rule to be followed in the valuation of ranch and grazing land in this state. The court then accepted the conception of the text only so far as the same was supported by adjudicated cases, and noted that the cases were occupied with questions arising out of assessment of railroads and an express company. The court also noted that the revenue act of this state recognized the peculiar nature of these businesses and properties, and provided for a special method of assessing the same, and that the rule did not pertain to the assessment of farm lands (nor would it pertain to the assessment of ranch or grazing land), but was limited in its application to the special classes of property such as railroads, toll bridges, express companies, and special constructions, all in strict harmony with the principles announced in 26 R. C. L., § 324, p. 367.

In the case of Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469, this court held: "A 20-year average of farm sales in a county is not competent evidence of the actual value of farm lands and improvements in such county. Such evidence is too remote." The court further said, in referring to section 77-201, R. R. S. 1943: "Actual value was therein defined as 'its value in the market in the ordinary course of trade.' We have repeatedly stated in effect that farm lands for purposes of taxation, as provided by this statute, shall be valued and assessed at their actual value, their value in the market in the ordinary course of trade. Schulz v. Dixon County, 134 Neb. 549, 279 N. W. 179, 119 A. L. R. 1294; Homan v. Board of Equalization, 141

Neb. 400, 3 N. W. 2d 650; Swanson v. Board of Equalization, 142 Neb. 506, 6 N. W. 2d 777."

We are unable to reason that where a county board takes as a guide to determine actual value the records of Federal Land Bank and insurance companies over a period of 10 years, that the same would have any evidentiary value in an attack upon the State Board. As stated in Laflin v. State Board of Equalization & Assessment, *supra:* "It is the duty of the Board to fix the value of farm lands and improvements (and this would apply to ranch lands and grazing lands) at their actual value at the time they are appraised for assessment purposes. Any attempt to depart from this provision of the statute by averaging values during past periods of time which are too remote to have evidentiary force, constitutes a noncompliance with legislative direction and any relief from this requirement, if relief is required, must come from the Legislature."

The fact that sales of land are traditionally infrequent does not mean nor imply that such sales as do occur do not represent the ordinary course of trade, but, in fact serve to affirmatively demonstrate that the traditional situation of infrequent sales is the ordinary course of trade. The County's contention cannot be sustained.

The County contends that the State Board was in error in not treating the ranch land of the state as a separate class of property. The County makes reference to Article VIII, section 1, of the Constitution of the State of Nebraska, which need not be set out.

Section 77-507, R. R. S. 1943, provides that the State Board shall have power, in equalizing assessments, to do so as to classes or kinds of property, personal, real, or mixed, in any county or tax district. In support of the above contention, the County asserts that, taking the state as a tax district, the State Board should treat the ranch land of the county and other counties that were named in the County's brief in close proximity to the county here involved, as a separate class or kind of

property under the law, which the State Board did not do. In this connection, the County takes the position that at the time the State Board convened it had before it the percentage comparisons between the assessed values of real property placed by the county assessor, and the actual prices real property sold for; and that the purpose of such figures was to show the manner by which the county assessor and other counties, for a 5-year period, had been evaluating real property for assessment purposes, and to enable the State Board to arrive at a lawful equalization for 1953.

There appears in the record a newspaper article containing a map showing how all of the counties for the past 5 years have done the job of assessment as estimated by the State Tax Commissioner's office. The figures appearing on the map are percentage comparisons between the valuation placed on real estate by the county assessor and the actual prices received when the property was sold. For example, taking Grant County, the upper figure appearing on the map representing town property on the average was assessed at about 29 percent of what it sold for. The lower figure representing, we might say, ranch land, on the average was assessed for about 23 percent of what it sold for. All of the counties in the state are shown on the exhibit in similar manner.

The County sets forth in its brief the percentage of increase as determined by the State Board for several counties in the state, and concludes that the disparity as shown by the 5-year average figures showing the assessed values of the lands of the respective counties and the increase in value of said lands therein as determined by the State Board, discloses that the State Board did not treat ranch lands in the state in the area of the County as a separate class of property.

From an examination of the exhibit and the comparisons therein shown as above indicated, it is conclusive that the exhibit has no value as evidence.

By the language in Laflin v. State Board of Equali-

zation & Assessment, *supra,* as heretofore appears, it is indicated in the opinion that the average sale price of land over any extended period of time may be entirely different from the actual market price, and any attempt to employ such average as a basis for tax assessments is improper in the absence of a showing that market conditions remained wholly constant during the entire period from which the average was taken, up to and including the assessment date.

We find no requirement in the law that the State Board make separate adjustments with respect to ranch lands and tilled or farming lands, as opposed to making adjustments with respect to a general all-inclusive class of lands and improvements. The presumption is that the State Board has acted fairly and impartially in determining what percentum adjustment should be made with respect to the general class of property known as "lands and improvements" and has taken cognizance of the different types of land which are included within the general classification. See Hacker v. Howe, *supra.*

The County contends that the State Board erred in not bringing property values to a uniform standard, and in particular as applied to Grant County, in all classes of property. The County argues that the 1953 equalization as shown by the record in the instant case was not made by the State Board using any reasonable method or upon any basis of a uniform standard, therefore, it was not made according to law. The County refers to Hacker v. Howe, *supra,* to the effect that the values of property of different counties in the aggregate as thus determined may be adjusted and equalized by the State Board to the end that all property of the different counties may contribute a just and equitable proportion of public revenue.

The County also refers to State ex rel. Sorensen v. State Board of Equalization & Assessment, 123 Neb. 259, 242 N. W. 609, which held: "One of the duties of the state board of equalization is that of equalizing assess-

ments, that is, changing assessments by increasing or decreasing the same, to the end that all the property in the state shall bear its just proportion of the burdens of taxation. * * *."

As heretofore stated, the County, in its brief, made extensive comparisons as shown by the 5-year average figures. The only comparisons we deem relevant to prove a disparity between adjustments in various counties would be comparisons of the ultimate valuations which result from the application of such adjustments and the relationship thereof to actual value within the meaning of the revenue laws.

As to other property here involved, no discussion is necessary in view of our determination of the adjustments of real estate as heretofore appears, which is equally applicable to other classes of property.

The statute does not require any particular method of procedure to be followed by the State Board in equalizing the assessment of range and grazing lands between the various counties. It may adopt any reasonable method for that purpose. The State Board, in equalizing the value of range and grazing land as between the various counties, may act upon the abstracts of assessments returned by the various counties, the knowledge of its own members as to value, or any other information satisfactory to it. See Boyd County v. State Board of Equalization & Assessment, *supra*.

With reference to the foregoing, if on appeal from the State Board to this court it appears on the face of the record that the action of the State Board was arbitrarily made, then this court will so determine. See Laflin v. State Board of Equalization & Assessment, *supra*.

It is the function of the State Board of Equalization and Assessment to examine the assessment rolls of the various counties and, by the process of equalization, raise or lower the valuations therein contained to conform to the requirement that taxable property shall be

assessed at fifty percent of its actual value. See § 77-201, R. S. Supp., 1953.

On appeal from a final order of an administrative board, however, the review by the appellate court is ordinarily limited to questions of law and whether or not the evidence is sufficient to sustain the order. The sole question is whether such order was arbitrarily made. See Laflin v. State Board of Equalization & Assessment, *supra*.

From an examination and study of the record we believe the decision and final order of the State Board of Equalization and Assessment is not arbitrary or capricious, but is in accordance with the record and the law. It is ordered that the decision and final order of the State Board of Equalization and Assessment be, and is hereby, affirmed.

AFFIRMED.