COUNTY OF KEARNEY, APPELLANT, V. STATE BOARD OF
EQUALIZATION AND ASSESSMENT, APPELLEE.
160 N. W. 2d 179

Filed June 28, 1968. No. 36790.

Jesse T. Adkins and William H. Meier, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Kearney County, claiming in this appeal that it is entitled to a reduction of the valuations expressed in its own abstract of assessment furnished the State Board of

Equalization and Assessment in 1967, appeals from the order of the Board fixing the values, without change, as recited in its abstract of assessment. We affirm the order of the Board.

If the Board's action is arbitrary, based on the record before us, it will be reversed. County of Blaine v. State Board of Equalization & Assessment, 180 Neb. 471, 143 N. W. 2d 880; Fromkin v. State, 158 Neb. 377, 63 N. W. 2d 332. The main thrust of the county's argument is a familiar one. It argues that because the Tax Commissioner's sales assessment ratio shows a rural ratio of 31 percent for Kearney County and a group of surrounding counties an average of 24 percent, that it is entitled to a commensurate reduction of 23 percent. We first note that this argument fails to recognize that under our Constitution and law, equalization must be on a statewide basis and, as we have noted in previous cases, consideration must be given to all counties with an equal or higher sales assessment ratio. The argument that its ratio is sufficiently disproportionate to the statewide mean or median ratio as to be arbitrary or capricious is not presented. Furthermore, the county assessor, in asking that no change be made, testified that the Tax Commissioner's sales assessment ratio only represented 18 rural sales out of 3,500 parcels of rural property, and that its own sales assessment ratio computed on the basis of 1967 sales, showed a ratio of 26.71 percent. We point out further that there was evidence, State's exhibit 15, based on United States census figures that the values in Kearney County are the same as in adjoining Phelps County and lower than the values in at least six adjoining or nearby counties. And the State's exhibit 14 indicates that the average selling price per acre of rural property is higher than all but one of the adjacent counties. In the light of this alone it can hardly be said that it was arbitrary to conclude that the proposed Tax Commissioner's sales assessment ratio did not properly reflect a disparity sufficient to command a reduc-

tion, much less on a statewide equalization basis.

But the argument that the Board's action was arbitrary on the record must fail on deeper and more cogent grounds. The Tax Commissioner's recommendations, upon which the county now relies, were based, in the words of the Tax Commissioner himself, almost exclusively on the sales assessment ratio (State's exhibit 6). The members of the Board, after listening to expert testimony that this new and refined ratio was, in principle, accurate and valid, then heard the testimony of the assessors and other county officials from the 93 counties summoned to the hearing. In independent and vigorous attacks, although strikingly similar in analyses, these officials effectively undermined the validity of the proposed sales assessment ratio for any basis of statewide equalization. Not the least, if not the best, presentation was made by the Kearney County assessor, the only representative of the county appearing and testifying for it. The Tax Commissioner's office specifically commended the assessor and took special precautions to preserve his testimony. At the conclusion of all of the evidence from all of the counties, the Board found, with the Tax Commissioner (a constitutional member of the Board), concurring, both generally and as to Kearney County, as follows: "The present sales-assessment data are insufficient and inadequate to serve as a basis for valuation adjustments."

Supporting these findings were a multitude of factors found in the evidence. We generalize a few. The study was based on 1966 sales study alone. We called attention to the possible error in this method in Hanna v. State Board of Equalization & Assessment, 181 Neb. 725, 150 N. W. 2d 878. A consideration of the sales used showed that in many counties they constituted one percent or less or were clearly unrepresentative. See, County of Lincoln v. State Board of Equalization & Assessment, 181 Neb. 744, 150 N. W. 2d 884; Hanna v. State Board of Equalization & Assessment, *supra* (concurring

opinion); H/K Company v. Board of Equalization, 175 Neb. 268, 121 N. W. 2d 382. In many counties there was over-valuation in the small towns and a disparity between various classes of property. In some counties the undisputed testimony indicated that certain sales were not representative but no indication that revised figures had been used after proper objection had been made. Disparity and disruption of equalization it was alleged would arise by using the ratio when county appraisals were in the process of completion. Application of the ratio would disrupt, according to undisputed testimony, an already existing fair equalization between some adjoining counties. There was considerable testimony that many of the sales reflected an inflationary trend due to loss investments for tax purposes, or where individuals were adding to existing units and willing to pay an inflated price. Special markets for certain types of land in some counties also existed. Besides all of these factors there was much evidence as to factors called attention to in Carpenter v. State Board of Equalization & Assessment, 178 Neb. 611, 134 N. W. 2d 272. From all of this it is abundantly clear that there was ample, if not a preponderance, of evidence to support the Board's finding that there was no adequate basis before it to change the county's valuation.

The county next argues perimeter valuations and attaches exhibits to its brief in support of this argument. But there were no perimeter studies or exhibits in evidence or in the record in this case and they may not be considered. Moreover, the evidence shows that they were specifically rejected by the Tax Commissioner's office as a basis for equalization and their questionable character has been noted previously by this court in other cases.

The county argues that at a minimum this court should order equalization between adjoining counties, because of overlapping school districts, educational service units, and other subdivisions crossing county lines. As we

have seen, there is ample evidence to support the finding that there is no rational basis in the record for doing this. Further, there is no authority in the law or the Constitution for the Board or this Court to carve out special districts and equalize within them. The only power of the Board is to equalize on a statewide basis; district or intracounty equalization is not authorized. See, Carpenter v. State Board of Equalization & Assessment, *supra*, and cases cited therein. The confusion and inequality that would be created is apparent. There is no merit to this contention. And we fail to understand an argument that while an invalid ratio will not justify an increase, that by the operation of some magical factor not elucidated, that the same ratio is valid for accomplishing a decrease in county valuations.

We have labored at some length with the contentions of the county. Appearing of record in this case is a situation that would require affirmance of the Board's order in any event. The county assessor of Kearney County was the only witness for the county, and the only official appearing for it. At the end of his testimony he stated as follows: "In conclusion, I wish to thank you for allowing me to testify in behalf of Kearney County. I respectfully submit that a *no change* decision be granted Kearney County for reasons and evidence submitted in my testimony." (Emphasis supplied.)

There are no formal pleadings required or filed by the county before the Board. Without belaboring the theory of the law of judicial admissions, this position by the county should be considered binding, especially with relation to the reasonableness of the action of the Board. It was entitled to rely on this position, apparently did, and the county is in no proper legal position to now urge a change in position, especially in the context of statewide equalization. A party may not complain of error which he has invited. And one who asks relief, which is granted. cannot appeal from such decree because the effect is different from that anticipated by the party. A

party cannot be heard to complain of an error which he himself was instrumental in bringing about. Miller v. Dixon, 176 Neb. 659, 127 N. W. 2d 203; Crunk v. Glover, 167 Neb. 816, 95 N. W. 2d 135; Campbell v. Crone, 10 Neb. 571, 7 N. W. 334.

In conclusion it is necessary for the county to establish arbitrariness or unreasonableness of the order of the Board. This has not been done. The Board's order comes to this court with a presumption of validity and its reasonableness affirmatively appears when we consider the fundamental rule that the Board may rely on and is entitled to act on the presumption that the abstracts of assessment returned by the various counties have conformed to the law. County of Grant v. State Board of Equalization & Assessment, 158 Neb. 310, 63 N. W. 2d 459; Fromkin v. State, *supra;* Carpenter v. State Board of Equalization & Assessment, *supra.* When the officials who compiled and presented a basis for equalization to the Board rejected it themselves as a standard for equalization, we fail to see how this court is in a position to declare that it was arbitrary and unreasonable on the part of the Board to reject it, with the Tax Commissioner himself so voting, as a proper standard for performing its duty.

The order of the Board is not arbitrary, capricious, or unreasonable and therefore is affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting.