REQUESTED BY: Senator George Coordsen District No. 32
1. Whether an amendment to the claims bill, LB 811, is constitutional when it seeks to appropriate additional funds to pay a claim which has already been settled, and when a full, complete, and legally binding release has been executed by all of the parties involved?
2. Whether the Legislature, by an amendment to the claims bill, appropriate funds to pay a claim which has not yet been presented to the State Claims Board?
1. No. Such an amendment would constitute special legislation contravention of Article III, Section 18 of the Nebraska Constitution and the principles of sovereign immunity. Moreover, this amendment would violate the separation of powers doctrine set forth in Article II, Section 1 of the Constitution.
2. No. Again, a reading of the pertinent statutes and case law indicates that such an amendment would constitute special legislation in contravention of Article III, Section 18 of the Nebraska Constitution and the principles of sovereign immunity.
In your first question, you have asked whether an amendment to LB 811, the claims bill, is constitutional when it seeks to appropriate additional funds to pay a claim which has already been settled, and when a full, complete, and legally binding release has been executed. Specifically, you are concerned about Senator McFarland's amendment to LB 811, Am 1002, wherein he proposes to pay an extra $1,000.00 to a private individual above and beyond a settlement amount already agreed to and paid by the State of Nebraska and other defendants. It is the opinion of this office that this proposed amendment is unconstitutional for a number of reasons.
First, the proposed amendment violates the principles of sovereign immunity. Article V, Section 22 of the Nebraska Constitution provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." The Nebraska Supreme Court has held on numerous occasions that this section is not self-executing, and that the Legislature must, by specific and clear legislation, waive the immunity of the state in order for anyone to bring an action against the state. Gentry v. State, 174 Neb. 515, 118 N.W.2d 643
(1962); Vision Quest, Inc. v State, 222 Neb. 228,383 N.W.2d 22 (1986).
In accordance with these propositions of law, the Legislature has enacted the State Claims Acts. See Neb.Rev.Stat. § 81-8,209 et seq. (Tort Claims), 81-8,294 et seq. (Miscellaneous Claims), and81-8,302 et seq. (Contract Claims). These general statutes set forth the specific means by which tort and nontort claims, for which no money has been specifically appropriated, may be prosecuted; thus, they provide the exclusive remedy for individuals to sue the state for tort, miscellaneous, and contract claims. The state has not waived its sovereign immunity to be sued for such claims in any other manner.
The facts which are at issue here involve an original settlement agreement between the state, other defendants, and Barbara Shaw which would have called for the state to pay to Ms. Shaw $25,000.00. Ms. Shaw was required to file a miscellaneous claim for this amount with the State Claims Board. Said claim was allowed by the Board and forwarded to the Legislature for appropriation. The Legislature, however, deleted $2,500.00 from the appropriation amount. For this reason, two state employees became responsible personally for this amount. However, because of certain actions by Ms. Shaw which arguably breached the earlier settlement agreement and LB 1235, which requires that a full release of all parties be given before payment can be made, the parties engaged in further good faith bargaining as to the amount that these individuals would be required to pay to her. The result of these negotiations was that Ms. Shaw agreed to accept $1,500.00 instead of $2,500.00 as payment in full of her claims against these employees. This amount, together with the amount appropriated by the Legislature, has been paid in full, and a release has been executed by Ms. Shaw. Under the principles of sovereign immunity, the Legislature has no authority under the Nebraska Constitution to alter this settlement.
However, by proposing amendment 1002, Senator McFarland has essentially asked the Legislature to ignore the principles of sovereign immunity and enact special legislation in contravention of Article III, Section 18 of the Nebraska Constitution. Article III, Section 18 provides in pertinent part that: "The Legislature shall not pass local or special laws . . . granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. . . . In other cases where a general law can be made applicable, no special law shall be enacted."
This provision of the Nebraska Constitution was addressed in the leading case of Cox v. State, 134 Neb. 751,279 N.W. 482 (1938), cited with approval in Smith v. Government of Virgin Islands, 375 F.2d 714 (3rd Cir. 1967). There, a legislative bill was passed which waived, for the plaintiff alone, the statute of limitations, and thereby the sovereignty of the state, and created liability on the part of the state for the negligence of its agents and servants. The Nebraska Supreme Court held that the Legislature's attempt to waive the sovereign immunity of the state and create liability on the state's part in favor of an individual for negligence was a special law in violation of Article III, Section 18. In so holding, the court reasoned: "It therefore seems apparent that only by general law, uniform in its application to persons, can liability of the state be constitutionally created for the negligence of its agents and servants." With this language, the court indicated that, by according preferred status to the plaintiff, the bill made an unreasonable distinction between the plaintiff and similarly situated citizens whose recovery for similar injuries would be barred.
Applying this holding to the instant case, it is patently obvious that, by ignoring the general laws providing the sole remedies for tort and nontort claims, the amendment in question attempts to enact special legislation to inure to the benefit of a private individual which privilege has not been extended to other individuals who have followed the claims process. AM 1002 is a special law providing for the payment of a gift in the amount of $1,000.00 to a designated person and not to a class of people, even though this person has already negotiated and received a fair settlement under the general laws, which provide that the claims process exists as her exclusive remedy.
Secondly, AM 1002 violates the separation of powers doctrine set forth in Article II, Section 1 of the Nebraska Constitution, which provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Pursuant to Article IV, Section 1 of the Nebraska State Constitution, the Attorney General is an executive officer.
The Attorney General and his designees are vested with broad common law and statutory powers to carry out the duties of the Office. The inherent power and authority of the Attorney General to initiate and defend actions, to make decisions regarding strategy, and to negotiate and enter into settlements was addressed in State v. State Board of Equalization and Assessment, 123 Neb. 259, 242 N.W. 609 (1932), cited with approval in State v. Douglas, 217 Neb. 199,349 N.W.2d 870 (1984). There, the Nebraska Supreme Court held that the Attorney General is the principal law officer of the state. Id. at 262. In this regard, the court stated:
We find that a late case, which is in line with the weight of authority, is State v. Finch, 128 Kan. 665, 66 A.L.R. 1369, which traces the powers and duties of the Office of the Attorney General at common law from the earliest times to the present time, and holds:
 "Ordinarily the Attorney General, both under common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest."
(Emphasis added.) Id. at 261. Moreover, the court stated that the Attorney General is clothed and charged with all common law powers and duties except to the extent that they are limited by statute; and, as the chief law officer of the state, he is authorized to exercise all such power and authority as the public interests may require, absent some express legislative restriction to the contrary. Id. at 261-262; State v. Douglas, 217 Neb. at 237.
These common law powers and duties were later codified by the Nebraska Legislature. Neb.Rev.Stat. § 84-202
(Reissue 1987) provides:
 "The Department of Justice shall have the general control and supervision of all actions and legal proceedings in which the State of Nebraska may be a party or may be interested, and shall have charge and control of all the legal business of all departments and bureaus of the state, or of any office thereof, which requires the services of attorney or counsel in order to protect the interest of the state." (Emphasis added.)
With respect to the Miscellaneous Claims Act, it is provided that: "[t]he Attorney General shall be the legal advisor to the board for the purposes of this section and may authorize the Assistant Attorney General in charge of the Claims Division to perform any of his or her duties under this section." Neb.Rev.Stat. § 81-8,297 (1988 Cum.Supp.).
Thus, it is clear from a reading of the cases and relevant statutes that the Attorney General and his designees have the power and duty to represent the state when tort and nontort claim are filed against it pursuant to the State Claims Acts. These powers include negotiating settlements and settling litigation. AM 1002, by proposing an additional payment of $1,000.00 over the amount of a settlement consummated by the Attorney General would, in essence, have the legislature exercise the duties and powers of the Attorney General, an executive officer. This is clearly an unconstitutional violation of the separation of powers doctrine.
In your second question, you ask whether the Legislature, by an amendment to the claims bill, can appropriate funds to pay a claim which has not first been presented to the State Claims Board in accordance with the claims statutes. Again, our reading of the pertinent statutes and case law indicates that such an amendment would violate the principles of sovereign immunity and constitute special legislation in contravention of Article III, Section 18 of the Nebraska Constitution. The legal reasoning and basis for this conclusion has been previously discussed within the body of this opinion and will not be restated here. However, it is clear that the Legislature has waived the state's sovereign immunity to be sued only to the extent and in the manner set forth in the claims acts. With respect to miscellaneous claims, Neb.Rev.Stat. § 81-8,296 (1988 Cum.Supp.) states: "The State Claims Board shall have the power and authority to receive and investigate miscellaneous claims against the state." Section 81-8,300 further provides that if the claimant is dissatisfied with the Board's decision, he or she may file an application for review by the Legislature. However, it is clear that the statutory prerequisite to review by the Legislature is that a claim must first be filed with the State Claims Board and a decision rendered by it before the Legislature may review the claim. If the Legislature bypassed this process for one individual, thereby attempting to waive the state's sovereign immunity, the Legislature would be enacting special legislation for the benefit of a single person as against all other similarly situated persons.
Sincerely yours,
ROBERT M. SPIRE Attorney General
Lisa D. Martin-Price Assistant Attorney General Clerk of the Legislature