REQUESTED BY: Lawrence S. Primeau, Director Department of Administrative Services
You have requested an Attorney General's Opinion as to whether the State Treasurer may withhold his signature from a warrant approved by the Department of Administrative Services. The answer to your question depends upon whether the State Treasurer has statutory, constitutional or common law authority which provides discretion with regard to approval and rejection of warrants.
Nebraska law regarding warrants is found in the state Constitution, Supreme Court decisions, case law, and in numerous statutes concerning the State Treasurer, the Department of Administrative Services, and warrants in general.
Constitutional Provisions Concerning Warrants
The Nebraska Constitution provides that "No money shall be drawn from the treasury except . . . on the presentation of a warrant issued as the Legislature may direct. . . ." Neb. Const. art. III, § 25. The Constitution also provides that "The Legislature shall provide by law that all claims upon the treasury shall be examined and adjusted as the Legislature may provide before any warrant for the amount allowed shall be drawn." Neb. Const. art. VIII, § 8.
Constitutional, Common Law and Statutory ProvisionsConcerning the State Treasurer's Authority as to Warrants
Pursuant to Article IV, Section 1 of the Constitution of the State of Nebraska, the Treasurer is an executive officer. The Treasurer's status as an executive officer has remained unchanged since at least the adoption of the 1875 Constitution. SeeState ex rel. Spire v. Conway, 238 Neb. 766,472 N.W.2d at 413. Consequently, the Treasurer has those powers provided in Article IV, section 1 of the Constitution of the State of Nebraska. This section provides that "Officers in the executive department of the state shall perform such duties as provided by law." In Nebraska, the "law" includes the common law and powers embedded in the constitution as well as statutory law.See Neb. Rev. Stat. § 49-101 (Reissue 1988);State v. Douglas, 217 Neb. 199, 349 N.W.2d 870 (1984);In re Integration of Nebraska State Bar Ass'n,133 Neb. 283, 275 N.W. 265, 266 (1937).
The Nebraska Supreme Court has consistently interpreted the Nebraska Constitution as encompassing common law and inherent powers of constitutional officers. In fact, the existence of inherent powers of state constitutional officers has been recognized by the Nebraska Supreme Court consistently for over one hundred years. See State ex rel. City of Lincoln v.Babcock, 19 Neb. 230, 27 N.W. 98 (1886); State v.Douglas, 217 Neb. 199 at 237-238, 349 N.W.2d 870 (1984);State v. State Board of Equalization and Assessment,123 Neb. 259, 242 N.W. 609 (1932). See also Ex parteWeaver, 570 So.2d 675 (Ala. 1990); American LegionPost No. 279 v. Barnett, 20 N.E.2d 45, 51 (Ill. 1939) (discussing the authority of the State Treasurer).
In determining whether a particular official has inherent constitutional authority, a court may examine whether the duty in question is such that it may be implied from the nature of the office. A starting point is the title of the office itself. As another aid in this determination, the court may also examine the nature of the duties of the officer at the time the constitution was adopted. See 81A C.J.S. § 134, States
at 574.
Today the primary duties of the State Treasurer are set forth in statute at Neb. Rev. Stat. §§ 84-601 to 84-617
(1994). In particular, section 84-602 lists a number of basic responsibilities. Although § 84-602 is a statutory enumeration of the Treasurer's duties, it also likely represents a codification of common law duties. The history of this statute dates to 1866. See R.S. 1866, c. 4, § 18, p. 24. Thus, the statute predates statehood and the constitution.
Section 84-602(2) provides "It shall be the duty of the State Treasurer . . . (2) To disburse the public money upon warrants drawn upon the state treasury according to law, andnot otherwise. . . ." (Emphasis added). In addition, section84-607 provides, "If the State Treasurer shall willfully refuse or neglect to pay any warrant lawfully drawn upon the treasury, when money for the payment of the same is in the treasury, he shall forfeit and pay fourfold the amount to be recovered by action against the treasurer and his sureties, on his official bond or otherwise. He shall also suffer such punishment as the law may provide." (Emphasis added).
Other statutes regarding warrants are found at Neb. Rev. Stat. §§ 77-2201 to 77-2215. In addition, some of the Treasurer's duties with regard to warrants are interwoven with statutes governing the Department of Administrative Services, since the Department of Administrative Services has statutorily imposed duties regarding preparation and issuance of warrants.
Section 81-1121(1)(a) (1994) provides: "The Director of Administrative Services shall have power to develop and implement a system of warrant preparation and issuance in accordance with acceptable accounting and internal control safeguards and by use of such mechanical means as may be most economical." Under this statute a "warrant" is defined as including "an order drawn by the director upon the State Treasurer, directing the latter to pay a specified amount to a specified payee by the use of a duel signature negotiable instrument. . . ." Neb. Rev. Stat. §81-1121(1)(b).
Pursuant to § 81-1121(3), "The State Treasurershall countersign all warrants issued by the director." (Emphasis added). The preceding section, § 81-1121(2), provides that "[T]he director shall signify that the payment intended by a warrant bearing such signature is proper underthe appropriate laws of the state." (Emphasis added).
Analysis and Conclusion
When all the constitutional and statutory provisions are read together and examined in light of relevant case law, the answer to your question is as follows: Where a warrant is lawfully drawn upon the state treasury, the State Treasurer has a ministerial duty to disburse the public money and may not withhold his signature from the warrant. However, where the warrant is not drawn according to law, he has no such duty.
This is true notwithstanding Neb. Rev. Stat. §81-1121(2)(3) since the Treasurer has inherent constitutional authority and cannot be made a pawn of an appointed statutory official and ordered to sign an unlawful warrant simply because a facsimile signature has been stamped on the warrant by DAS. As a previous Nebraska Attorney General stated,
 [T]here is a limit beyond which the Legislature cannot go in depriving a constitutional officer of his duties or in making him subordinate to a statutorily created officer. Were this permitted, the Legislature might absolutely deprive the Treasurer of all control, power or authority over the public funds but yet leave him responsible for any losses in connection therewith.
1969-70 Rep. Atty Gen. 164, 165 (Op. No. 110, May 5, 1970).See also State ex rel. Mattson v. Kredrowski,391 N.W.2d 777, 782 (Minn. 1986) ("Functions relating to the receipt, care and disbursement of State monies define the treasurer position and separate it from the other executive offices of state government established in our constitution."); Allenv. Rampton 463 P.2d 7, 13 (Utah 1969); Ex parteCorliss 114 N.W. 962 (ND 1907).
Our conclusion is supported by a Nebraska Supreme Court decision. In State ex rel. Rogers v. Swanson, 192 Neb. 125,219 N.W.2d 726 (1974), the Relator sued the State Treasurer for refusing to countersign a warrant upon the treasury of the State of Nebraska which had been issued and transmitted to the Treasurer. The Treasurer had refused to countersign the warrant on the ground that the statute under which the warrant was issued was unconstitutional. The statute provided public grants to students in need of tuition and to attend private colleges. With regard to the Treasurer's refusal to sign the warrant, the Nebraska Supreme Court stated, "The legality of therespondents' action depends upon the constitutionality of thestatute." Id. at 127. (Emphasis added). The Court found the statute to be unconstitutional and declined to order the Treasurer to sign the warrant. We believe it is significant to note that the provision in § 81-1121(2) regarding the director signifying the propriety of the warrant under state law was in effect at the time of the Swanson
decision.[1]
Consequently, since the Treasurer has no duty to sign warrants that are not lawful, it is within the Treasurer's authority to request documentation, information or legal advice before countersigning a warrant in order to satisfy himself whether the warrant is or is not lawful. This does not mean the Treasurer has authority to make policy decisions or refuse to sign warrants when the State has a legal obligation to pay out funds that have been appropriated for that obligation by the Legislature.[2]
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved By:
____________________________ Attorney General
[1] It is arguable that a more logical time to question the legality of a warrant is upon its presentment rather than when issued. See Neb. Rev. Stat. § 77-2203. However, we recognize the practical problems associated with this approach and also the fact that this is not what was done in theSwanson case.
[2] As discussed above, the Treasurer may be penalized for improperly refusing to sign warrants. Furthermore, the Treasurer is not required to make such inquiries in all cases and may rely on the Department of Administrative Services' pre-audit review.