GUSTAVE SCHULZ ET AL., APPELLEES AND CROSS-APPELLEES,
V. DIXON COUNTY, APPELLANT AND CROSS-APPELLEE: SCHOOL
DISTRICT NO. 60, INTERVENER, APPELLEE AND CROSS-APPEL-
LANT.

279 N. W. 179

FILED APRIL 16, 1938. No. 30290.

*John E. Newton,* for Dixon County, appellant.

*McCarthy & McCarthy,* for Gustave Schulz et al., ap-
pellees.

*Harry N. Larson,* for School District.

*Ray E. Sabata, amicus curiæ.*

Heard before Goss, C. J., Rose, Eberly, Day, Paine, Carter and Messmore, JJ.

Eberly, J.

This appeal involves the assessed valuation for taxation of fifteen parcels of land in school district No. 60 (Wakefield) in Dixon county, Nebraska. Wakefield is a city of the second class. District No. 60 embraces the city of Wakefield and sections 28, 29, 31, 32 and 33, township 27, range 5, adjacent thereto. The lands situated within school district No. 60, and without the corporate limits of Wakefield, are farm lands, and were so used at the time of the assessment complained of. The owners of these farm lands allege in their petition that the school district levy in school district No. 60 is 18.3 mills; that the school district levy in other and adjoining districts does not exceed 6 mills; and that by reason of the higher levies in school district No. 60 plaintiffs' lands are not worth as much as similar farm lands in adjoining school districts, and that they should therefore be reduced in valuation for tax purposes. This petition was given due consideration by the county board of equalization and denied. Plaintiffs thereupon prosecuted an appeal to the district court, where, after a trial *de novo* on the merits, the district court found for plaintiffs and ordered the assessment of the lands of plaintiffs reduced to the extent of 25 per cent. In the last paragraph of a memorandum opinion the trial judge sums up the situation presented by the record, as follows:

"It is true that the farm lands involved in this case are perhaps as valuable for farming purposes as any land in northeastern Nebraska, and the present rate of assessment does not exceed their actual value. Still the fact remains that the taxes on these lands are double that of lands of like character in the adjoining school districts; and if the case of *Schmidt v. Saline County, supra* (122 Neb. 56, 239 N. W. 203), is to remain the law of this state, the court can do but one thing, and that is to order a reduction of the valuation."

The defendants Dixon County and School District No. 60, as intervener, prosecute appeals from the judgment so entered to this court.

The principal point presented for decision in *Schmidt v. Saline County,* 122 Neb. 56, 239 N. W. 203 (hereinafter referred to as the *Schmidt* case), and the actual determination made by this court therein appear in the following paragraph of the opinion, viz.:

"The principal controversy here is with reference to the cause which affects the value of plaintiffs' lands. It appears that for many years school district No. 68, in Saline county, has levied a tax, for school purposes, running from 14 to 17 mills annually on the dollar of assessed valuation, and that a like levy will be necessary and will continue in said district for years to come. It also appears that the tax levy for school purposes on lands of the same character and quality, situate outside of and adjacent to the district, is from 4 to 5 mills on the dollar of assessed valuation. This has resulted in imposing a tax on an average quarter-section of land within district No. 68, for several years last past, of about $350 per annum, while in a quarter-section of land of the same quality and character, lying adjacent to but outside the district, the tax is about $175 per annum. This situation has caused a decrease in the actual value of the lands within the district, for sale and loan purposes, of 20 to 25 per cent."

The correctness of the conclusion stated must be determined by the proper application of the constitutional and statutory provisions directing and regulating the valuation of lands for assessment purposes. Reduced to its elements, the sole question presented is the simple one of valuation in conformity with law.

The only authorities cited to sustain the conclusion thus stated in the *Schmidt* case are: "The better rule and the one generally recognized is: 'If the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is the net profits derived

therefrom.' 26 R. C. L. 367, sec. 324. See, also, note to *Wells Fargo & Co. v. Johnson,* L. R. A. 1916C, 529, 532; 3 Cooley, Taxation (4th ed.) 2308, sec. 1146."

So far as farm lands are concerned, the constitutional provision pertinent is: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property. Taxes other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the legislature." Const. art. VIII, sec. 1.

Pursuant thereto the legislature duly enacted section 77-201, Comp. St. 1929 which provides: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value. 'Actual value,' as used in this act, shall mean its value in the market in the ordinary course of trade."

Examining the authorities cited by the majority opinion in the *Schmidt* case to sustain the conclusion there announced: In 26 R. C. L. 367, sec. 324, set forth more at length with the portion quoted in the opinion in the *Schmidt* case underlined, we find the following:

"When property has a known and determinate value ascertained by commerce in it, as in many kinds of personal property and in certain classes of real estate, there can be no difficulty in ascertaining its value for purposes of taxation. In many cases, however, the assessor has no such satisfactory guide, and must value the property by other means. In such cases, *if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is the net profits derived therefrom.* In such a case the tax is not levied upon the earnings as such, but the earnings are treated as a guide to the capital value. The value of the property is arrived at by capitaliz-

ing the net income therefrom at the rate of return prevailing in the same section of the country upon investment of a similar character. In determining the net income of any item of property as a basis for valuation for the purpose of taxation, the average net income for a number of years should be considered, rather than the earnings of a single year standing alone."

It is obvious that the first sentence of the paragraph just above quoted is in strict harmony with the Nebraska statute, and is the controlling rule to be followed in the valuation of the farm lands here in suit. The words "in such cases," which in the original preceded the words quoted in the opinion in the *Schmidt* case, constitute an obvious limitation thereof, and the text following these words is applicable only "in such cases" wherein "the assessor has no such satisfactory guide," etc.

Accepting the conception that a law text is authoritative only so far as supported by adjudicated cases, we find this conclusion is sustained by the cases cited in notes 9 and 10 in support of the quoted part carried in our opinion in the *Schmidt* case. In these notes we find fifteen cases cited, fourteen of which were occupied with questions arising out of the assessment of railways, and one of which related to the assessment of an express company. It may be noted that our present revenue act recognizes the peculiar nature of these businesses and properties, and provides special methods of assessing the same. In like manner, the note to *Wells Fargo & Co. v. Johnson*, L. R. A. 1916C, 529, 532, does not pertain to the assessment of farm lands. So, likewise, 3 Cooley, Taxation (4th ed.) 2308, sec. 1146, so far as in point here, is limited in its application by its supporting cases to special classes of property, such as railways, toll bridges, express companies, and special constructions, all in strict harmony with the principles announced in 26 R. C. L. 367, sec. 324, and is therefore inapplicable to, and in no manner controlling in, the question of the proper assessment of "farm lands." It cannot be said that either the nature of the property or the circumstances sur-

rounding it in the *Schmidt* case were effective to withdraw it from the scope of the plain mandate of section 77-201, Comp. St. 1929.

By section 77-1801, Comp. St. Supp. 1937, the county board on the last day of sitting as a board of equalization, or the county clerk after its adjournment, is authorized and directed to levy the amount of taxes which were adopted by the several school districts of the county. Now, in the instant case, there is no complaint as to the valuation of real estate for assessment, save as such complaint is based upon the levy of school taxes and the results thereof. Eliminating all question of school taxes and the effect thereof, the valuation of plaintiffs' farm lands is unchallenged. The result of the application of the state and county levies thereto would not result in plaintiffs paying an excessive state or county tax. It must be conceded that their state and county taxes thus assessed would be but proportionate to the exactions by the state and county from other owners of real estate of equivalent actual value. Their claim for relief is bottomed solely on the fact that their school taxes amount to 18.3 mills while the levy of surrounding districts for that purpose is not to exceed 6 mills. The relief granted, viz., lowering their valuation 25 per cent., reduced the same not only for the purpose of determining their school taxes, but also unjustly decreased the amount of their county and state taxes in that proportion.

Our statute provides that all real property in this state shall be assessed on the first day of April of every even-numbered year (Comp. St. Supp. 1937, sec. 77-1601) at its "actual value," meaning "its value in the market in the ordinary course of trade." Comp. St. 1929, sec. 77-201. This valuation of lands is made and returned by the officers as provided by law. The combined assessment and valuation of lands for the county is equalized by the county board sitting as a board of equalization, which, for that purpose, is required to hold a session of not less than three nor more than twenty days after the second Monday in June each year. Thereafter, abstracts covering all assessments

in the several counties of the state are submitted to the state board of equalization on the first Monday of July of the year of assessment, which board likewise equalizes the same, and on the basis of the valuations thus approved by it determine and assess state taxes as required. The object and purpose of the procedure is to secure for each real estate owner a fair assessment of state and county taxes on the basis of actual valuation of his property, determined by "its value in the market in the ordinary course of trade." Comp. St. 1929, sec. 77-201. The amount of the school taxes was a matter which neither county nor state was in any manner responsible for. It was the inevitable result of the exercise of the powers of local self-government by the school district alone.

"Local self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument (state Constitution). And even if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view." 1 Cooley, Constitutional Limitations (8th ed.) 92.

One of the units of local self-government is the school district. "Originally in New England, * * * the township and the school district were identical. * * * And the character of the school district as essentially a township has never been lost." In the transactions relating to the support and maintenance of the public schools in this state, "a spirit of vigorous self-government" is fostered. "Every school district is a miniature democracy where the people, within certain limits, enact their own laws, levy their own taxes, and choose their own officers." 1 Howard, Local Constitutional History of United States, 234-236.

True, in Nebraska, a school district is a creature of statute, possessing no power whatever beyond those given by the legislature. *American Surety Co. v. School District,* 117 Neb. 6, 219 N. W. 583. As an instrumentality of local self-government, in the discharge of its functions under all the statutes of its creation, the school district possesses

no power, actual or potential, express or implied, to adversely affect directly or indirectly the state's right and power, constitutionally vested, to assess the lands within its borders for the public benefit, at their value "in the market in the ordinary course of trade." Comp. St. 1929, sec. 77-201.

It would follow that if a relievable wrong exists in the present case, the remedy may not extend to the impairment of the taxing power of the state and county. But the very inherent nature of the basis of the claims of plaintiffs precludes the idea of a "legal wrong." We are here dealing with "public taxes," which we find defined as "those which are levied and taken out of the property of the person assessed, for some public or general use or purpose, in which he has no direct, immediate or pecuniary interest." 61 C. J. 75.

The following may be regarded as a summary of principles applicable in the instant case, viz.:

"Taxes proper, or general taxes, it has been said, 'proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all.' That this is the correct theory is beyond doubt, but nevertheless the contention has often been presented that property receiving no direct benefit from a tax for a particular purpose should not be taxed for such purpose. However, it is almost unanimously held that it is no defense to the collection of a tax for a special purpose that a person liable for the tax is not benefited by the expenditure of the proceeds of the tax or not as much benefited as others. For instance, every citizen is bound to pay his proportion of a school tax although he has no children, or is not a resident, and this also applies to corporations; of a police or

fire tax, although he has no buildings or personal property; or of a road tax although he never used the road. In other words, a general tax cannot be dissected to show that, as to certain constituent parts, the taxpayer receives no benefits. So property within the limits of a municipality is subject to local taxation although it derives little or no benefit from the municipal government. This rule is often applied to the taxation for special purposes of agricultural lands situated within the corporate limits of cities. If such property was exempted, the provision of the Constitution requiring taxes to be equal and uniform would be violated." 1 Cooley, Taxation (4th ed.) 213-215.

In the instant case obviously if these petitioners were to admit that they had each received full pecuniary compensation to the extent of the school tax paid, they would be entitled to no relief. Their real contention is made on the basis that, no such compensation being shown, they have sustained an injury because of not receiving any direct benefit of the school tax paid. This, in effect, is a dissection of the school tax to show that as to the tax in excess of 6 mills they have received little or no benefits. But this violates the basis of general taxation and the contention cannot be sustained. The payment of general taxes for school purposes may not operate, directly or indirectly, to secure immunity from the payment of state or county taxes, in whole or in part. To do so would be to violate the constitutional provision requiring state and county taxes to be equal and uniform throughout the state and throughout the county. Such is the inescapable effect of the decision before us.

It is obvious that the doctrines announced in the *Schmidt* case, as set forth in the majority opinion thereof, are not in harmony with the views herein expressed, and, upon due consideration, that case is expressly overruled and the doctrines announced therein rescinded. It also follows that, notwithstanding in the instant case the trial court has followed the case of *Schmidt v. Saline County, supra,* its judgment, for the reasons stated herein, is erroneous. There-

fore, the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.