INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 507, APPELLEE, V. CITY OF HASTINGS, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

138 N. W. 2d 822

Filed December 17, 1965. No. 35973.

Nelson, Harding & Acklie, for appellants.

David D. Weinberg, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This case involves the validity of an order of the Court of Industrial Relations requiring the parties to "eliminate or define" their controversies by "communications in good faith."

The City of Hastings is a municipal corporation or-

ganized and existing under the laws of Nebraska and, in its proprietary capacity, owns and operates the electrical, gas, and water departments of the city. The defendant board of public works directs the operation of these utilities and it has operated under this structure for many years pursuant to statute.

The action was initiated by the union with the authorization of a number of utility employees to compel the City of Hastings and its board of public works to discuss or bargain with the union in a representative capacity concerning the employees' wages, hours, and conditions of employment. The petition alleged that the city and its board of public works failed to reply to the union's requests to discuss or bargain with it as the authorized representative of the employees, and alleged that an industrial dispute existed between the parties.

The Court of Industrial Relations, on its own motion, ordered stricken the language in the prayer of the second amended petition requesting that the court order the City of Hastings and its board of public works to negotiate or bargain with the union; and appointed an investigator to determine the nature and extent of the industrial dispute, if any, between the parties. After hearing upon the investigator's report and recommendations, the court entered its order requiring:

"1. That the plaintiff and the defendants by communications in good faith shall eliminate or define their controversies in so far as such controversies concern:

a. The appropriateness of the procedure for setting wages of utility employees in so far as such procedure relates wages of the plaintiff's members to wages of policemen and firemen,

b. Basic wage rates, classification of workers, and wage rates for night work,

c. The standard for determining wage increases, and,

d. Fringe benefits, including but not limited to sick leave, meal allowances, and call-back pay; * * *.

"2. That such communications shall include written

and oral communications in such form, at such times and places, and under such circumstances as the parties in good faith with reasonable promptness shall determine; and that each communication of a party shall be reasonably responsive to the prior communication of the other.

"3. That the defendants shall arrange for the plaintiff's holding and conducting meetings of employees of Hastings utilities on utility time under circumstances no less favorable and convenient to the employees than have been the circumstances for such meetings heretofore held by the committee composed of superintendents, supervisors, and foremen.

"4. That each party shall respect and deal with, as the representatives or spokesmen of the other, such persons as such other in good faith shall authorize; and that the defendants shall not deal with or recognize or declare as the representatives of employees named in paragraph numbered 4 said committee composed of superintendents, supervisors, and foremen.

"5. That the plaintiff by supplemental petition and the defendants by cross petition filed in this Court no later than January 5, 1965, shall report the respects in which said controversies have been eliminated or defined."

It is the contention of the defendants that the order of the Court of Industrial Relations is invalid because, in fact, it requires a governmental employer to engage in collective bargaining or negotiations with a labor union, and because no statutory authority exists for the Court of Industrial Relations to make such an order.

Up to the present time, public employees are generally not entitled to collective bargaining in the sense that private industrial employees are. See Annotation 31 A. L. R. 2d 1142. The generally accepted rule established in other jurisdictions on the issue, which we adopt, is that a public agency or governmental employer has no legal authority to bargain with a labor union in the ab-

sence of express statutory authority. See, International U. of Op. Eng., Loc. 321 v. Water Works Bd., 276 Ala. 462, 163 So. 2d 619; Dade County v. Amalgamated Assn. of S. E. Ry. & M. C. Emp. (Fla.), 157 So. 2d 176.

Section 48-818, R. R. S. 1943, provides in part, with respect to the Court of Industrial Relations that: "The findings and order or orders may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same." That section then proceeds to list factors which the Court of Industrial Relations shall consider in establishing wage scales, hours of labor, and conditions of employment.

Section 48-816, R. R. S. 1943, provides in part: "In the event of an industrial dispute between employer and employees of a public utility *not operated by government in its proprietary capacity,* where such employer and employees have failed or refused to bargain in good faith concerning the matters in dispute, the court may order such bargaining to be begun or resumed, as the case may be, and may make any such order or orders as may be appropriate to govern the situation pending such bargaining." (Emphasis ours.)

Nowhere in the statutes governing the Court of Industrial Relations is the court given any power to compel a public utility, operated by government in a proprietary capacity, to bargain, negotiate, or otherwise communicate with its employees or any representative of them. It has long been accepted in this state that the enumeration of certain powers in a statute implies the exclusion of all others not fairly incidental to those enumerated, and that an affirmative description of specific circumstances in which certain powers may be exercised implies a negative as to the exercise of such powers in circumstances not enumerated. Harrington v. Grieser, 154 Neb. 685, 48 N. W. 2d 753; Hueftle v. Eustis Cemetery Assn., 171 Neb. 293, 106 N. W. 2d 400.

Where the Legislature has specifically limited the exercise of the power to compel bargaining to cases in-

volving public utilities *not* operated by government in its proprietary capacity, it has clearly manifested its intention that this power was not to be exercised in cases involving utilities which *are* operated by government in its proprietary capacity.

The Court of Industrial Relations in its very first case in 1948 held that it was without jurisdiction to compel and order utilities operated by the government in its proprietary capacity to bargain with a labor union, and that sections 48-801 to 48-823, R. R. S. 1943, contained no provisions, express or implied, for compelling bargaining or negotiation between unions and public utilities operated by government in a proprietary capacity. Local Union 739, International Brotherhood of Electrical Workers v. Central Nebraska Public Power & Irr. Dist., case No. 1, May 1, 1948, Court of Industrial Relations.

Legislative acquiescence in that interpretation of the statute by the Court of Industrial Relations has been clear and convincing. Bills to change that 1948 interpretation of the statute were introduced in the 1953, 1955, 1959, 1961, and 1963 legislative sessions. None of these bills were reported out of committee. In 1959, L. B. 464, the sole amending provision of which was to delete the phrase "not operated by government in its proprietary capacity" from section 48-816, R. R. S. 1943, was introduced. A motion to place L. B. 464 on general file was defeated.

The construction of a statute of doubtful meaning given it by those whose duty it is to enforce it, and which construction the Legislature has, by its continued noninterference for a number of years, acquiesced in, will be approved unless, as thus construed, it contravenes some provision of the Constitution, or is clearly wrong. Ainsworth Irr. Dist. v. Bejot, 170 Neb. 257, 102 N. W. 2d 416; Chicago & N. W. Ry. Co. v. Bauman, 132 Neb. 67, 271 N. W. 256.

We can reach no other conclusion than that the Court of Industrial Relations has no power to compel a public

utility operated by government in its proprietary capacity to bargain or negotiate with a labor union.

The plaintiff's position, and apparently that of a majority of the members of the Court of Industrial Relations, is that the court has jurisdiction and power to eliminate, define, and simplify controversies and thereby implement settlement of an industrial dispute; and that its jurisdiction, power, and authority must be liberally construed to effectuate public policy. Apparently the position is that the order here is actually within the judicial framework of the court, and is to require the parties, by "communications" in good faith, to eliminate or define their controversies, but is not really an order requiring the defendants to bargain or negotiate with the plaintiff. This is an exercise in semantics. There can be no logical question but that the order requires the parties to bargain or negotiate with each other. The only thing which even connects it with a judicial framework is the order of the Court of Industrial Relations. It cannot realistically be treated as anything other than a compulsory extrajudicial discussion, negotiation, or bargaining. The use of the word "communications" for "bargaining" may change the semantic surface, but the context is fatally distinctive. A gilded lily is still a lily. No matter what disguise in language is employed, the actual result remains negotiation or bargaining between the parties and outside any court. However desirable extrajudicial discussion between the parties or a court encouraged voluntary settlement might seem in effectuating the policies of the statutes, the statutory grant of power does not extend to the order here.

For the reasons stated, the Court of Industrial Relations was without power and authority to take the action which it did, and its order is therefore reversed.

REVERSED.