SCHOOL DISTRICT OF SEWARD EDUCATION ASSOCIATION, AN UNINCORPORATED ASSOCIATION, APPELLEE, V. SCHOOL DISTRICT OF SEWARD, IN THE COUNTY OF SEWARD, STATE OF NEBRASKA, ALSO KNOWN AS SCHOOL DISTRICT OF SEWARD, APPELLANT.

199 N. W. 2d 752

Filed July 21, 1972. No. 38267.

Blevins, Bartu & Blevins, for appellant.

Crosby, Pansing, Guenzel & Binning and Theodore L. Kessner, for appellee.

A. C. Sidner, Thomas F. Dowd, William A. Harding, Jack G. Wolfe, Nelson, Harding, Marchetti, Leonard & Tate, and L. Bruce Wright of Cline, Williams, Wright, Johnson & Oldfather, for amici curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is a labor case brought by plaintiff association as representative of the certificated teachers employed by defendant, School District of Seward. The Court of Industrial Relations, hereinafter referred to as court, ordered the defendant to negotiate with plaintiff on wages and conditions of employment. The parties negotiated all of the issues to settlement except a salary schedule. After trial, the court established a salary scale by increasing the 1970-71 base pay $100. Defendant perfected this appeal.

Defendant principally raises the question of the constitutionality of the legislation. Additionally, it questions the court's authority over administrative matters which may be included as conditions of employment; the compelling of negotiation and arbitration; and the right to set wages for school employees.

The provisions of the Constitution of Nebraska which could be pertinent are as follows:

Article I, section 4, provides in part: "* * * it shall be the duty of the Legislature to pass suitable laws * * * to encourage schools and the means of instruction."

Article II, section 1, provides: "The powers of the government of this state are divided into three distinct

departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

Article III, section 1, provides in part: "* * * the legislative authority of the state shall be vested in a Legislature * * *."

Article VII, section 6, provides: "The Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years."

Article VII, section 14, provides in part: "The State Department of Education shall have general supervision and administration of the school system of the state and of such other activities as the Legislature may direct."

Article VII, section 15, provides in part: "The State Board of Education shall be composed of eight members, * * *. * * * Their duties and powers shall be prescribed by the Legislature * * *."

Article XV, section 9, provides: "Laws may be enacted providing for the investigation, submission and determination of controversies between employers and employees in any business or vocation affected with a public interest, and for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare. An Industrial Commission may be created for the purpose of administering such laws, and appeals shall lie to the Supreme Court from the final orders and judgments of such commission."

The first question requiring consideration herein is the meaning of Article XV, section 9, Constitution of Nebraska. Was it intended to operate as an exception to Article II, and does it create a commission with legislative, executive, and judicial powers? In Engelmeyer v. Murphy (1966), 180 Neb. 295, 142 N. W. 2d 342, we

said: "In construing constitutional amendments, consideration should be given to the circumstances leading to their adoption and the purpose sought to be accomplished."

Article XV, section 9, came into our Constitution in the Constitutional Convention of 1919-1920. An examination of the proceedings of that Convention suggest that the implementation of the amendment by the legislation being questioned is in accord with the intention of its architects.

Substantially all of the work on the judicial article had been completed before Proposal No. 333, which became this section, was presented on the floor of the Convention. The Convention had altered the judicial article to permit the Legislature to establish courts inferior to the Supreme Court. The Committee on Industrial Conditions presented a substitute proposal for the four proposals originally introduced at the Convention. The substitute proposal was considered on the floor of the Convention, and then referred back to a joint committee of the Industrial Courts Committee and the Miscellaneous Subjects Committee for combination with the trade regulation proposal. This joint committee submitted Proposal No. 333. In submitting the proposal, the committee report states: "It is our judgment that a tribunal in the form of a commission with combined administrative, legislative and judicial powers, is the proper governmental agency to be entrusted with the powers and duties to be granted, and prescribed, the judicial power to extend to making findings and orders, leaving measures of enforcement by penalties or summary process with the judicial department of the state government."

In School Dist. No. 8 v. State Board of Education (1964), 176 Neb. 722, 127 N. W. 2d 458, we held: "It is the general rule that the Legislature may not lawfully delegate its legislative powers to an administrative agency. An exception to the rule obtains when a

delegation of legislative power is authorized by the Constitution.

"Article VII, section 14, of the Nebraska Constitution authorizes the grant of administrative and legislative powers to the State Department of Education, subject to implementation and limitation by the Legislature in accordance with Article VII, section 15, of the Constitution."

In Anderson v. Tiemann (1967), 182 Neb. 393, 155 N. W. 2d 322, after holding the Legislature had not made an unconstitutional delegation of legislative power, we said, discussing the matter of separation of powers: "Basically the same issues are involved with respect to delegation of judicial power. Article V, section 1, of the Constitution, vests judicial power in the tribunals therein named but also gives to the Legislature the power to create other courts inferior to the Supreme Court. However, L. B. 377 does not create a court but does grant to a state official or administrative body quasi judicial powers. Powers of the same general nature and character are conferred upon many administrative bodies. Such duties are of a quasi judicial nature and yet such bodies are almost invariably held to be administrative. See Dawson County Irr. Co. v. McMullen, 120 Neb. 245, 231 N. W. 840. The conferring upon state agencies or officers, of executive or administrative functions requiring the exercise of quasi judicial powers, does not conflict with the constitutional provisions regarding officers and bodies upon whom judicial power may be conferred. This is particularly true where such powers and duties relate to matters which are peculiarly affected with a public interest and where provision is made for appeal from decisions of such officers or agencies to the courts."

In Anderson v. Tiemann, *supra,* we further said: "This court has also recognized the principle of constitutional interpretation that each and every clause in a constitution has been inserted for some useful purpose. Con-

stitutional provisions should receive even broader and more liberal construction than statutes, and constitutions are not subject to rules of strict construction. Carpenter v. State, 179 Neb. 628, 139 N. W. 2d 541."

In State ex rel. Meyer v. State Board of Equalization & Assessment (1970), 185 Neb. 490, 176 N. W. 2d 920, we said: " 'We are indebted to the suffrage of the people for the adoption of all amendments submitted and indeed for the adoption of the original Constitution which such amendments changed. From this fact it is patent that, where the language employed is plain, the courts should accord to it the meaning which obviously would be accepted by the layman.' "

Article XV, section 9, Constitution of Nebraska, obviously was intended to be an exception to Article II of the Constitution. The language of the amendment, "Laws may be enacted providing for the investigation, submission and determination of controversies," coupled with the designation "An Industrial Commission," indicates a commission with administrative powers. The last sentence providing for appeals from its *final orders* and *judgments* means a commission with some judicial powers to determine controversies. The report of the joint committee that it was authorizing a commission with combined administrative, legislative, and judicial powers clearly indicates the type of commission or agency the Constitutional Convention was authorizing. In this respect, it is in the same category as Article IV, section 20, which created the Railway Commission. We have heretofore held that the Railway Commission has legislative, executive, and judicial powers as an exception to Article II. See, In re Lincoln Traction Co. (1919), 103 Neb. 229, 171 N. W. 192; Swanson v. Sorensen (1967), 181 Neb. 312, 148 N. W. 2d 197. The same is true with the Court of Industrial Relations. In adopting the constitutional provision authorizing an Industrial Commission, it was made an independent part of the

Constitution of Nebraska, and not as an amendment to Article II.

Article VII, section 14, Constitution of Nebraska, establishes a State Department of Education, and gives it general supervision and administration of the school system of the state. Section 15 of the same Article, however, provides that the State Board of Education shall be composed of eight members, and provides that their duties and powers shall be prescribed by the Legislature. The general supervision and administration of the school system of the state granted to the State Board of Education, while a constitutional grant of power, is dependent upon implementing legislative action. School Dist. No. 8 v. State Board of Education (1964), 176 Neb. 722, 127 N. W. 2d 458. In State ex rel. School Dist. v. Board of Equalization (1958), 166 Neb. 785, 90 N. W. 2d 421, which involved a Class III school district, as does the instant case, we said: "A school district in this state is a creature of statute and possesses no other powers than those granted by the Legislature."

In Campbell v. Area Vocational Technical School No. 2 (1968), 183 Neb. 318, 159 N. W. 2d 817, we said: "A school district is a creation of the Legislature. Its purpose is to fulfill the constitutional duty placed upon the Legislature 'to encourage schools and the means of instruction' * * *."

The Legislature has plenary power and control over school districts, including provision for the appointment or election of governing bodies thereof. Consequently, it may provide limitations on any authority to be exercised by a school board. If the Legislature has such complete control over public school districts, it follows, by the enactment of L. B. 15, Laws 1969, chapter 407, page 1405, it was exercising that control.

Upon application of the plaintiff, the court ordered the school district to conduct negotiations. This presents a two-pronged question. First, does the court have the power to order the district to negotiate about

anything; and second, does it have the power to order negotiations about professional associations, noon duty, dress code, and school calendar?

Section 48-837, R. S. Supp., 1969, provides: "Public employees shall have the right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing. Public employees shall have the right to be represented by employee organizations to negotiate collectively with their public employers in the determination of their terms and conditions of employment, and the administration of grievances arising thereunder; Provided, that any such agreements with the State of Nebraska or any agency thereof shall cover a biennial period coinciding with the biennial budgeting period of the state and shall be subject to approval by the Legislature."

Section 48-810, R. S. Supp., 1969, provides: "All industrial disputes involving governmental service, service of a public utility, or other disputes as the Legislature may provide shall be settled by invoking the jurisdiction of the Court of Industrial Relations; Provided, such court shall have no jurisdiction over any persons, organizations, or school districts subject to the provisions of the Nebraska Teachers' Professional Negotiations Act, sections 79-1287 to 79-1295, Revised Statutes Supplement, 1967, until all provisions of such act have been exhausted without resolution of the dispute involved."

Section 48-810.01, R. R. S. 1943, provides: "Notwithstanding any other provision of law, the State of Nebraska and any political or governmental subdivision thereof cannot be compelled to enter into any contract or agreement, written or otherwise, with any labor organization concerning grievances, labor disputes, rates of pay, hours of employment or conditions of work."

Section 48-818, R. S. Supp., 1969, provides: "The findings and order or orders may establish or alter the

scale of wages, hours of labor, or conditions of employment, or any one or more of the same. In making such findings and order or orders, the Court of Industrial Relations shall establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions. In establishing wage rates the court shall take into consideration the overall compensation presently received by the employees, having regard not only to wages for time actually worked but also to wages for time not worked, including vacations, holidays, and other excused time, and all benefits received, including insurance and pensions, and the continuity and stability of employment enjoyed by the employees. Any order or orders entered may be modified on the court's own motion or on application by any of the parties affected, but only upon a showing of a change in the conditions from those prevailing at the time the original order was entered."

In International Brotherhood of Electrical Workers v. City of Hastings (1965), 179 Neb. 455, 138 N. W. 2d 822, we held that a public agency or governmental employer had no legal authority to bargain with a labor union in the absence of express statutory authority, and further that the Court of Industrial Relations had no power to compel a public utility operated by government in its proprietary capacity to bargain or negotiate with a labor union. Subsequent to this case, in 1967, the law was amended to give the court authority to order bargaining when the public corporation was acting in a proprietary capacity, as defined in section 48-801, R. R. S. 1943. L. B. 15 amended section 48-816, R. R. S. 1943, to eliminate "when acting in a proprietary capacity as defined in section 48-801" from the statute, but left the provision permitting the court to order bargaining unchanged, although several other additions were

made to section 48-816, R. R. S. 1943.

L. B. 15 amended sections 48-801, 48-804, 48-810, 48-811, 48-816, and 48-818, and repealed sections 48-810.02, 48-820, and 48-824 to 48-836, R. R. S. 1943. It did not repeal or amend section 48-810.01, R. R. S. 1943, which came into the law in 1967. The question for our consideration, therefore, is whether or not there is a conflict between section 48-810.01, R. R. S. 1943, and section 48-818, R. S. Supp., 1969. Section 48-810.02, R. R. S. 1943, provided that in cities having a population of more than 5,000, or in cities under civil service, the court had jurisdiction to order discussion on the application of either party. Section 48-820, R. R. S. 1943, provided that any industrial dispute not within the jurisdiction of the court could by mutual consent be referred to the court for arbitration. Sections 48-824 to 48-836, R. R. S. 1943, covered arbitration for cities of more than 5,000, or a city under civil service, but any decision or report would be advisory only. It is obvious that by eliminating these sections, the Legislature intended to eliminate advisory arbitration reports, and by L. B. 15 attempted to give the court authority to order bargaining.

Section 48-810, R. S. Supp., 1969, provides that all industrial disputes involving governmental service *shall be settled* by invoking the jurisdiction of the Court of Industrial Relations, but limits the jurisdiction of the court where sections 79-1287 to 79-1295, R. S. Supp., 1967, are involved, *until* those provisions have been exhausted *without a settlement of the dispute*. It may be argued that section 48-810.01, R. R. S. 1943, was inadvertently left in the law. We do not accept this premise, but assume the Legislature acted with full knowledge that it was leaving this section in the statute. Consequently, the section must be given some meaning in relation to the other sections, because all statutes in pari materia must be considered together and construed as if they were one law, and, if possible, effect given to

each provision. City of Grand Island v. Ehlers (1966), 180 Neb. 331, 142 N. W. 2d 770. The court construed section 48-810.01, R. R. S. 1943, to mean that while the court could not order a school district to enter into a contract, the court had the power to settle any controversy pursuant to sections 48-816 and 48-818, R. S. Supp., 1969. In doing so, it was not forcing the district to enter into a contract with the union but was exercising its power to settle a dispute under section 48-818, R. S. Supp., 1969. There is no other construction which would harmonize the sections.

Defendant's position is indicated by the following from its brief: "Whatever jurisdiction the Court of Industrial Relations may have, this much is certain that notwithstanding any other provision of law the School District cannot be compelled to enter into any contract or agreement with any labor organization concerning rates of pay. The Court's judgment is in direct violation of this statute." This, of course, is premised on its interpretation of section 48-810.01, R. R. S. 1943. We have indicated our interpretation.

There have been many dire predictions relative to the possible ramifications of L.B. 15 if we do not find section 48-810.01, R. R. S. 1943, specifically prevents the court from entering a binding order on wages and conditions of employment. As we interpret the Constitution, the Legislature has complete control of the actions of school boards. Whether or not the Legislature has acted wisely in the premises is not a matter for judicial determination. The courts are not arbiters of legislative wisdom, but function as a check upon unauthorized and unconstitutional assumptions of power. If the situation is as critical as defendant and the amici curiae believe, we can only observe, as we did in State v. Workman (1971), 186 Neb. 467, 183 N. W. 2d 911: "* * * defendant is making his contentions in the wrong forum. They might appropriately be addressed to the Nebraska Legislature, but it is the duty of this court

to interpret and enforce laws passed by the Legislature if constitutionally valid, which this one is."

The next question raised involved an interpretation of the language "conditions of employment." While the issue may be moot because the parties did reach agreement on all points referred except wages we do feel some observations are pertinent. Generally, teacher organizations have given the term "conditions of employment" an extremely broad meaning, while boards of education have tried to restrict that term to preserve their management prerogatives and policy-making powers. While there are many nebulous areas that may overlap working conditions, boards should not be required to enter negotiations on matters which are predominately matters of educational policy, management prerogatives, or statutory duties of the board of education. Kansas, by statute, has defined conditions of employment to include hours of work, vacation allowances, sick and injury leave, number of holidays, and wearing apparel. K.S.A. 1971 Supp., § 75-4322(s). Without trying to lay down any specific rule, we would hold that conditions of employment can be interpreted to include only those matters directly affecting the teacher's welfare. Without attempting in any way to be specific, or to limit the foregoing, we would consider the following to be exclusively within the management prerogative: The right to hire; to maintain order and efficiency; to schedule work; to control transfers and assignments; to determine what extracurricular activities may be supported or sponsored; and to determine the curriculum, class size, and types of specialists to be employed. The public policy involved in this legislation is expressed in section 48-802, R. R. S. 1943. With this public policy in mind, school districts and teacher associations should negotiate in good faith within the ambit of their respective responsibilities.

One of the amici curiae raised the point that the court had not complied with the Administrative Pro-

cedures Act. The point was not raised by defendant, and there is nothing in the record to indicate noncompliance with the Act. Because the question may be raised in the future, we hold the Court of Industrial Relations is an agency within the purview of the Administrative Procedures Act.

The Court of Industrial Relations does not come within the definition of a court as used in section 84-901, R. R. S. 1943, nor has it been specifically excepted from the operation of the Act. In this respect, it is in the same situation as the Nebraska Railway Commission. In Yellow Cab Co. v. Nebraska State Railway Commission (1963), 175 Neb. 150, 120 N. W. 2d 922, we held the railway commission to be an agency within the definition in section 84-901, R. R. S. 1943. That section provides, so far as material herein: "Agency means each board, commission, department, officer, division, or other administrative office or unit of the state government authorized by law to make rules, except the Adjutant General's office, as provided in Chapter 55, the courts, including the Nebraska Workmen's Compensation Court, and the Legislature; * * *." Section 48-809, R. R. S 1943, grants the court full power to adopt all reasonable rules and regulations.

The following from Yellow Cab Co. v. Nebraska State Railway Commission, *supra*, is pertinent herein: "The fact that the commission has certain legislative and judicial powers which may distinguish it in certain respects from other agencies which exercise purely administrative powers does not prevent it from being an agency of the state in a broad sense."

For the reasons enunciated, the judgment of the court is correct and is affirmed.

AFFIRMED.

NEWTON, J., dissenting.

I find that I cannot agree with the majority opinion adopted as the law of this case. For a great many years the states have opposed and decried the steady and

seemingly inexorable growth of federalism and the centralization of governmental powers in the national capitol. This decision and the legislative act on which it is based is a step toward the creation of similar centralized powers in the Nebraska State Capitol on a statewide basis. It deprives local political subdivisions of the right to manage their own affairs in regard to employment practices. The law of supply and demand is nullified as is also ability to pay. It is replaced by the arbitrary decisions of a Commission operating on a statewide level. Since the wages of employees constitute a very major item in the budgets of all political subdivisions, the decisions of the Commission necessarily interfere with and, to some extent, govern the governmental duties of making budgets, appropriations, and ascertaining the levels of taxation. Although our political subdivisions are, at least for the most part, restricted in authority to powers granted by the Legislature, the theory of local self-government is recognized by our constitutional provisions relating to counties and cities. As was aptly stated in Schulz v. Dixon County, 134 Neb. 549, 279 N. W. 179: "Local self-government, having always been a part of the American system, finds recognition in the provisions of our State Constitution; and even if not expressly recognized, it is still to be understood that these instruments are framed with its present existence and anticipated continuance in view."

The powers conferred by Chapter 48, article 8, R. R. S. 1943, on the Industrial Commission are very broad. If construed as applicable to the State and its political subdivisions, they necessarily conflict with existing statutes, theories of government, and constitutional provisions. Tax levies of certain municipalities, school districts, townships, and other governmental subdivisions are limited by legislative enactment and, in the case of counties, by the Constitution. The power to make appropriations and to levy taxes has been vested in the local governing bodies. There are penalties assessable

for violations such as excess levies or spending unbudgeted and unappropriated funds. Furthermore, tax levies and appropriations are made on an annual basis and are not thereafter subject to change. Can the Commission, under the guise of settling a labor dispute regarding wages or other expense items, direct the governing bodies of these organizations to expend additional funds and, in so doing, violate statutory or constitutional provisions expressly passed or adopted for their government? Can it take over the powers of taxation and appropriation specifically granted these political subdivisions by the Constitution and statutes? This situation would indicate that Article XV, section 9, Constitution of Nebraska, did not contemplate placing public bodies under the Commission's jurisdiction. Furthermore, *not a single one* of the statutes governing these political subdivisions in the manner mentioned has been amended to make the taxation and appropriation authorities subject to tinkering by the Commission. In this respect there has been a violation of Article III, section 14, of the State Constitution.

Also of interest is a situation which could develop on the state level. Nebraska has the standard republican form of government with its basic three-way division of powers. The most fundamental of all constitutional powers awarded to the legislative branch is the exclusive power to appropriate funds and levy taxes. This is a power which it cannot delegate. See, 16 C. J. S., Constitutional Law, § 133, p. 552; Opinion of the Justices, 54 Del. 366, 177 A. 2d 205; Crane v. Frohmiller, 45 Ariz. 490, 45 P. 2d 955; Blaine County Inv. Co. v. Gallet, 35 Idaho 102, 204 P. 1066; El Dorado Independent School Dist. v. Tisdale (Tex. Com. App.), 3 S. W. 2d 420; Opinion of the Justices, 244 Ala. 386, 13 So. 2d 674; Cook v. Up-to-Date Silk Yarn Dyeing Co., 155 Misc. 435, 278 N. Y. Supp. 348.

What then is the effect in an instance where the Legislature has appropriated a sum to recompense state

employees and provided for raising this money by taxation, then in a dispute over wages, the Industrial Commission raises wages? Any excess over the legislative appropriation cannot be paid under constitutional provisions and the attempt to delegate power to the Commission to settle the dispute by raising wages is an attempt to delegate power to the Commission to make a state appropriation. As such it is void and unconstitutional. "It is just as fundamental that the power to tax and the power to provide for the disposition of taxes raised are identical and inseparable, and the Legislature is clothed with full power and control over the disposition of revenues derived from taxation, including those raised by political subdivisions of the state under authority of the state, subject only to constitutional restrictions. * * *

"It should also be construed when the meaning is not clear to conform with fundamental principles of taxation in the levy and collection of taxes and in the apportionment and distribution thereof unless a contrary intent is indicated by its terms. The fundamental principle that the powers of the Legislature on matters of taxation are plenary except where clearly restricted by the Constitution, must also be considered. The powers of the Legislature on matters of taxation cannot be limited by implication or interpretation, and the restriction upon the legislative power must be clear and unequivocal. The construction given the constitutional provision by the Legislature and by administrative officers since its enactment must likewise be given the effect to which it is entitled." State ex rel. School Dist. of Scottsbluff v. Ellis, 168 Neb. 166, 95 N. W. 2d 538.

The act creating the Commission purports to derive its authorization from Article XV, section 9, Constitution of Nebraska. The language of that section and the powers it intended to confer are not clear. Was it intended to apply to the State and its governmental sub-

divisions? I submit that the foregoing indicates it was not.

Article XV, section 9, Constitution of Nebraska, provides: "Laws may be enacted providing for the investigation, submission and determination of controversies between employers and employees *in any business or vocation affected with a public interest*, and for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare. An Industrial Commisison may be created for the purpose of administering such laws, and appeals shall lie to the Supreme Court from the final orders and judgments of such commission." (Emphasis supplied.)

The scope covered is limited to "any business or vocation *affected with a public interest.*" Just what businesses can the Legislature authorize the Industrial Commission to deal with? It will be noted that this section uses the words *"any business or vocation."* What is the common and accepted meaning of these words? A business is "a commercial or industrial enterprise." A vocation is "the work in which a person is regularly employed." Webster's Third New International Dictionary, p. 2561. The terms refer to occupations, activities, and enterprises for gain, advantage, or livelihood. See Black's Law Dictionary (De Luxe, 4th Ed.), p. 248. No governmental unit, whether it be the state or a subdivision, can be classified as a business or vocation. They are only governmental agencies supplying governmental services on a nonprofit basis. As such, the powers conferred in Article XV, section 9, Constitution of Nebraska, are clearly inapplicable to them. Employment by the State, for example, is not a vocation. Vocation means type of employment such as stenographer, accountant, secretary, laborer, etc. In adopting Chapter 48, article 8, R. R. S. 1943, as amended, the Legislature has exceeded its constitutional powers in its attempt to bring governmental agencies within the ambit

of the act and the act is unconstitutional. "The words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense." State ex rel. Caldwell v. Peterson, 153 Neb. 402, 45 N. W. 2d 122. See, also, State ex rel. Johnson v. Chase, 147 Neb. 758, 25 N. W. 2d 1.

What is meant by the term "affected with a public interest"? It is a fundamental principle of constitutional construction that effect must be given to the intent of the framers of the organic law and of the people adopting it. See 16 Am. Jur. 2d, Constitutional Law, § 64, p. 239. In State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502, it is held: "The meaning of a constitutional provision is to be determined as of the time of its adoption, and the intent and understanding of its framers and the people who adopted it is the principal inquiry in construing it." In Ramsey v. County of Gage, 153 Neb. 24, 43 N. W. 2d 593, it is stated: "* * * this court will take judicial notice of the proceedings of the Constitutional Convention." The decision of the court is embodied in the following statement: "It is quite apparent from an examination of the Proceedings of the Constitutional Convention with reference to the subject matter here involved that the people did not only change the language of the provision of the Constitution in question but the construction as well." See, also, Swanson v. State, 132 Neb. 82, 271 N. W. 264.

The constitutional provision in question was adopted pursuant to the Constitutional Convention of 1919-1920. An examination of the Convention proceedings and of the statement made by the drafter of the provision make it crystal clear that it was not intended to bear upon or affect governmental units. The amendment was denominated "Proposal No. 333." As originally introduced, it provided in part as follows: "Section 1. Laws

may be enacted providing for the investigation, submission and determination of controversies between employers and employees in which the *public welfare* is affected; providing against unfair business practices and unconscionable gains in any business or vocation affected with a public interest; and the interest of the public may be protected by law against interruption, *either in the public service, in the operation of public utilities or in the production and distribution of commodities essential to the public welfare."* (Emphasis supplied.) Note it specifically included *public service,* as well as public utilities, and commodities essential to the public welfare. Considerable discussion ensued resulting in its amendment as finally adopted. At that time the delegate offering the amended version defined the term "affected with a public interest." He distinguished it from the general welfare and then stated: "Business, as I understand it, affected by a public interest is business in which the public surrenders to some person, firm, association or corporation, some right in which the public gives to some individual or corporation, some privilege which it might not otherwise have the right to enjoy. If the Convention will permit me I will read from as good an authority as we have upon definitions, Bouvier's Law Dictionary:

" 'PUBLIC INTEREST. If by public permission one is making use of public property and he chances to be the only one with whom the public can deal with respect to the use of that property, his business is affected with a public interest which requires him to deal with the public on reasonable terms.' That is quotation from Cooley on Constitutional Limitations.

" 'Business affected with a public interest:

" '1. Where the business is one, the following of which is not of right, but is permitted by the state as a privilege or franchise. 2. Where the state on public grounds renders to the business a special assistance by taxation or otherwise. 3. Where for the accommo-

dation of a business special use is allowed to be made of public property or of a public easement. 4. Where the special privileges are granted in consideration of some special return to be made to the public.'

"In other words business that is affected by a public interest is business for which the public as a whole, which society because of some person or corporation and special right, privilege or franchise, and in consideration of the granting of that right of franchise the public interest is affected and the conduct of such corporation or person may be regulated by law."

It is clear that the term "business or vocation affected with a public interest" was used in its narrow legal sense and that this usage was understood by the delegates. The original reference to "public service" which might be interpreted as extending to governmental services was deleted, presumably for good reason. The businesses referred to include *only* private businesses.

"Respecting regulation consistently with due process, businesses 'affected with public interest' are merely those subject to exercise of police power. Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co., Cal., 82 P. 2d 3, 14, 118 A. L. R. 486.

"A business is 'affected with a public interest' when by law or legal authority it is given a virtual monopoly in its field or where the public adapt their business or conduct to the methods used by it. Western Buse Telephone Co. v. Northwestern Bell Telephone Co., 248 N. W. 220, 229, 188 Minn. 524. * * *

"Constitutional provisions requiring 'due process of law' and 'equal protection of the laws' do not preclude a state Legislature from regulating a business 'affected with a public interest,' which means subject to the 'police power,' where regulation is not unreasonable, arbitrary, capricious, or discriminatory, and means are related to object of regulation. Bohannon v. Duncan, 196 S. E. 897, 898, 185 Ga. 840. * * *

"A business is 'affected with a public interest,' where the one engaged in it is acting under a franchise, or has a virtual monopoly in it, or where from the nature of the business the one carrying it on is necessarily intrusted with the property or money of his customers, or where the business has been conducted in such manner that the public have adapted their business to the methods used; but the fact that a license is required does not make the business a public employment. People v. Steele, 83 N. E. 236, 238, 231 Ill. 340, 14 L. R. A., N. S., 361, 121 Am. St. Rep. 321; City of Chicago v. Powers, 83 N. E. 240, 231 Ill. 560.

"The phrase 'affected with a public interest' can mean no more than that an industry, for adequate reason, is subject to control for the public good, and there is no closed class or category of such businesses affected with a public interest. Respecting regulation consistently with due process, businesses 'affected with public interest' are merely those subject to exercise of police power; touchstone of public interest not being enjoyment of any franchise or monopoly. Nebbia v. People of State of New York, N. Y., 54 S. Ct. 505, 291 U. S. 502, 78 L. Ed. 940, 89 A. L. R. 1469." 5A Words and Phrases, Business Affected, pp. 675, 676.

Public or governmental business has never been a subject of the police power. Such an exercise of power is unnecessary because this type of business is subject to direct legislative control at all times and in all respects without resort to the extraordinary remedy provided by the police power. It seems clear that Article XV, section 9, does not authorize legislation bringing political subdivisions or governmental agencies within the jurisdiction of the Industrial Commission. I conclude that insofar as present statutes attempt to delegate such power, they are unconstitutional and void.

In passing it may be well to note that Article XV, section 9, was adopted as a result of similar activity in the State of Kansas, yet in defining businesses "affected

with a public interest," the Kansas statute omits governmental units. See Kansas Statutes Annotated, section 44-603.

Another fundamental rule is that every statement in a state constitution must be interpreted in the light of the entire document, rather than as a sequestered pronouncement and because fundamental constitutional principles are of equal dignity and none must be so enforced as to substantially impair the other, if there is an apparent repugnancy between different provisions, the court should harmonize them if possible. See 16 Am. Jur. 2d, Constitutional Law, § 66, p. 243. In State ex rel. Johnson v. Chase, 147 Neb. 758, 25 N. W. 2d 1, it is said: "The language of the Constitution is to be interpreted with reference to the established laws, usages and customs of the country at the time of its adoption. * * *

"The Constitution must be read in connection with the facts of history and the development of a representative form of government. * * *

"The Constitution as amended must be construed as a whole." See, also, Swanson v. State, 132 Neb. 82, 271 N. W. 264.

If Article XV, section 9, is limited in its application to public service companies and other private or corporate businesses which bear directly and materially on the public welfare and are therefore "affected with a public interest," there will be no conflict with other constitutional provisions, but if it is not, there is an obvious conflict. As heretofore pointed out, on the state level, the Legislature, and the Legislature only, can control the appropriation of money and the taxes to be levied. See Article III, sections 22 and 25, Constitution of Nebraska. Even the Legislature cannot incur indebtedness in excess of $100,000. See Article XIII, section 1. The division of governmental powers is provided for in the following language: "The powers of the government of this state are divided into three

distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Article II, section 1, Constitution of Nebraska. No direct constitutional provision authorizes such an encroachment by the executive or judicial departments upon the budgetary and appropriative powers of the Legislature.

There is also, as has been pointed out, a conflict with Article VIII, section 5, which places a limit on the amount of taxes which counties may assess or levy. Counties are presently hard pressed to finance their customary duties. To permit a foreign body to impose additional financial burdens by means of increased wages and salaries on a county which is already levying the maximum tax allowed will compel an excess levy or will simply require the abandonment or curtailment of county services rendered in connection with the maintenance of roads and bridges, the administration of social welfare, and of the numerous activities engaged in by various county officers. In the latter case, they will be unable to fulfill the duties imposed upon them by law.

From a practical standpoint, the Commission, by following guidelines it might see fit to adopt, can bring about a statewide wage scale for school district employees with a complete disregard for individual fitness and irrespective of the size and ability to pay of the respective districts. In so doing it can bring about the demise of many school districts and may well impair the operation of Article VII, section 6, which requires the Legislature to provide for free instruction in the common schools. In attempting to interfere with school curriculums, teachers' duties and hours, and local conditions under which teachers are employed and work, it will also clash with Article VII, section 14, which gives to the State Department of Education the general

supervision and administration of our school system.

The conflict with other constitutional provisions indicates two things. First, that Article XV, section 9, was never intended to be so broadly construed. Second, that in construing it in the light of the Constitution as a whole, it cannot be interpreted as a grant of authority over the State and its political subdivisions if it is to be reconciled with other constitutional directives.

I submit that Chapter 48, article 8, R. R. S. 1943, as amended, is unconstitutional and void.

WHITE, C. J., joins in this dissent.

CLINTON, J., dissenting.

I respectfully dissent. The majority opinion points out, correctly I believe, that Article XV, section 9, of the Constitution of Nebraska, authorizes the creation of the commission with commingled administrative, executive, and judicial powers. The opinion also points out that this is an independent grant of such power by virtue of the special provisions of Article XV, section 9, and is a constitutional exception to the separation of powers provision of Article II. I agree with this reasoning insofar as it applies to the scope of the matters entrusted to the commission by Article XV, section 9.

The point raised by Judge Newton is not the specific constitutional question raised by the defendant, but I believe it is in part valid. With him I believe Article XV, section 9, does not by its terms apply to employers and employees in the governmental sector. I base this conclusion upon the language of section 9 as adopted and without reference to the language eliminated from the original proposal in the course of this consideration. Section 9 grants power in two areas: (1) In determining controversies between employers and employees "in business or vocations affected with a public interest," and (2) the prevention of *"unfair business practices and unconscionable gains* in any business or vocation affecting the public welfare." (Emphasis supplied.)

It seems apparent to me that the terms "business or vocation" as twice used in Article XV, section 9, refers to profit-making businesses and vocations for the term "unfair business practices and unconscionable gains" can have no reference to the operation of state or governmental subdivisions in their governmental capacities. As first used, those terms refer to the employer's business or vocation and not to the occupation or vocation of the employee, for example, teachers. It is not reasonable to assume that in the first instance government is included in the term "business or vocation" and in the second instance it is not.

Because the statute in question grants a combination of executive, legislative, and judicial powers outside the scope of the matters authorized by Article XV, section 9, it runs afoul of Article II of the constitutional provision pertaining to the separation of powers.

There would, however, seem to be no question that the Legislature may enact independently of Article XV, section 9, labor legislation applicable to public employees, but in so doing the provisions of Article II on the separation of powers must be observed.

BOSLAUGH, J., concurring.

The question concerning the construction of Article XV, section 9, Constitution of Nebraska, raised in the dissenting opinion of Judge Newton, is not without force although not presented in any of the briefs filed in this case.

The section permits the enactment of laws relating to "controversies between employers and employees in any business or vocation affected with a public interest." Although there can be disagreement as to what this language means, it would appear that the terms business or vocation were used in an alternative sense and that legislation relating to controversies between employers and employees under this section is not limited to a business affected with a public interest.

The legislative construction of a constitutional pro-

vision, although not controlling, should be given consideration, particularly in doubtful cases and when deliberately made.

McCOWN, J., joins in this concurrence.